[Civ. No. 22740. Third Dist. Mar. 8, 1984.]

VELMA IRENE ROSE, Individually and as Conservator, etc., et al., Plaintiffs and Appellants, v.
COUNTY OF PLUMAS et al., Defendants and Respondents.

**COUNSEL**

William J. Hooy and Ron Lane for Plaintiffs and Appellants.

Peters, Fuller, Rush, Schooling & Carter, David R. Fuller and James Farnsworth for Defendants and Respondents.

## OPINION

COUZENS, J.*—Plaintiffs Noel and Velma Rose, husband and wife, appeal from a judgment of dismissal entered in favor of defendants County of Plumas, Sheriff S. Douglas Thomas, and Deputy Sheriffs J. Shaver and R. E. Day (county) after county's general demurrer to plaintiffs' first amended complaint was sustained without leave to amend. We shall reverse the judgment.

### FACTS

According to plaintiffs' first amended complaint,[1] on June 18, 1981, plaintiffs Noel and Velma Rose were customers of the Plumas Club, a bar in Plumas County, and "were relaxing and enjoying the companionship of other patrons . . . ." Therein ensued a "siz[e]able commotion" between Evie Cardell and Jennifer Hampton, "persons of known violent and vicious propensities," which "threatened the safety, quiet and repose" of plaintiffs and the other guests. While assisting the bartender in evicting the combatants, alleges the complaint, Mr. Rose received extensive personal injuries, all of which resulted in permanent disability. The first cause of action seeks to impose liability on the bar for failure to properly operate the premises; the second cause of action seeks damages for assault and battery from the two women. These causes of action are not the subject of this appeal.

The third cause of action seeks to establish the liability of the county through the failure of Deputies Shaver and Day to render aid to plaintiff. ■ ■■ ■ The complaint states:[2] "A special relationship existed between plaintiff NOEL ROSE and defendants SHAVER and DAY in that on June 18, 1981, defendants SHAVER and DAY were dispatched by the PLUMAS Sheriff's Department to investigate a disturbance at THE PLUMAS CLUB; that they undertook an investigation and in the course of that investigation they became aware that plaintiff NOEL ROSE had sustained severe injuries

---

*Assigned by the Chairperson of the Judicial Council.

[1]Plaintiffs filed the original complaint on February 10, 1982. A minor correction was made on March 16, 1982. On June 2, 1982, county filed a general demurrer to the complaint alleging that the complaint did not plead facts sufficient to establish that a special relationship existed between Noel Rose and defendants Shaver and Day. On October 19, 1982, the court sustained the demurrer with leave to amend. On November 1, 1982, plaintiffs filed their first amended complaint.

[2]Generally speaking, material facts alleged in a complaint are treated as true for purposes of ruling on a demurrer (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032]), as are facts that may be implied or inferred from those expressly alleged. (*Harvey* v. *City of Holtville* (1969) 271 Cal.App.2d 816, 819 [76 Cal.Rptr. 795].) However, contentions, deductions and conclusions of fact or law alleged in a complaint are not considered in judging the sufficiency of the complaint. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d at p. 572.)

as the result of a criminal assault and battery by defendants CARDELL and HAMPTON; that plaintiff NOEL ROSE lay injured and bleeding at the scene at the rea[r] of THE PLUMAS CLUB and in need of emergency treatment; that no ambulance or other emergency team had arrived to administer to plaintiff NOEL ROSE's then needs; and that there was evidence at the scene which might be lost. This special relationship gave rise to a duty of care on the part of defendants SHAVER and DAY to take steps to provide for plaintiff NOEL ROSE's emergency care and thereby shield him from unreasonable risk of further harm and to secure the scene to prevent loss of valuable evidence." Concluding, the complaint alleges: "Despite this special relationship and duty of care, defendants SHAVER and DAY, and each of them, negligently, recklessly and wilfully conducted their investigation and ignored their responsibilities to plaintiff NOEL ROSE, abandoning him and failing both to provide emergency aid and to secure evidence at the scene."

The fourth cause of action alleges that investigating officers were under a mandatory duty to provide for plaintiff's emergency care and to secure the scene to prevent loss of valuable evidence. (Gov. Code, § 815.6.) In the fifth cause of action, based upon the same theories of liability set forth in the other causes of action, plaintiff wife seeks damages as conservator for her husband and for loss of consortium.

The county filed a general demurrer to the first amended complaint alleging plaintiffs had not amended their complaint so as to state facts sufficient to establish a "special relationship" upon which the defendants might be held liable. **(2)** (See fn. 3.) The trial court sustained the demurrer without leave to amend and, by its judgment entered on February 4, 1983, dismissed plaintiffs' action against all of the county defendants.[3]

### DISCUSSION

### I

■ The primary issue on appeal is whether police officers have an affirmative duty to render emergency aid to an injured person found at the

---

[3]The judgment of the Superior Court of Plumas County sustaining the county's demurrer without leave to amend completely disposes of all claims by plaintiffs against the county defendants. All remaining claims to be tried in plaintiffs' action are against other defendants not party to this appeal. Judgment in favor of the county is severable from the remaining controversy and as such is final and appealable as to the county defendants. (*Wilson* v. *Sharp* (1954) 42 Cal.2d 675, 677 [268 P.2d 1062]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 48, pp. 4063-4064.)

scene of an investigation.[4] The essence of plaintiffs' argument is simply that once the police undertake an investigation, and during the course of that investigation they discover a person wholly "dependent" upon them for emergency aid, they are then under a duty to render that aid. We disagree.

We find the recent decision in *Williams* v. *State of California* (1983) 34 Cal.3d 18 [192 Cal.Rptr. 233, 664 P.2d 137] dispositive. There, plaintiff was seriously injured when a piece of heated brake drum from a passing truck was propelled through the windshield of the automobile in which she was riding, striking her in the face. She sued the state, alleging negligence in the form of nonfeasance—failure of the highway patrol officers who investigated the accident to examine the brake drum part to determine if it was still hot, to identify other witnesses at the scene of the accident, or to attempt any investigation or pursuit of the owner or operator of the truck whose brake pad broke and caused plaintiff's injuries. Plaintiff alleged that the failure to properly investigate the accident destroyed her opportunity to obtain compensation from the unidentified person who injured her.

The *Williams* court could not find the "special relationship" between plaintiff and the state necessary to create the tort duty of the police to act. The court emphasized the need to show that the actions of the police either *increased the risk of harm to plaintiff or caused him to rely thereon to his detriment.* ██ "[I]t is settled that the rules concerning the duty—or lack thereof—to come to the aid of another are applicable to law enforcement personnel in carrying out routine traffic investigations. Thus, the state highway patrol has the right, but not the duty, to investigate accidents [citations] or to come to the aid of stranded motorists [citation]. Nevertheless, although 'no special relationship may exist between members of the California Highway Patrol and the motoring public generally, or between the Patrol and stranded motorists generally' [citation], when the state, through its agents, voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member, *thereby inducing reliance,* it is held to the same standard of care as a private person or organization. [Citations.]" (Italics added.) (*Id.*, at p. 24.)

██ Nothing in the complaint even suggests that plaintiffs in any sense relied on the police for medical aid. Plaintiff's injuries were sustained prior to the arrival of the police; they did not cause them. The officers did not

---

[4]The complaint also alleged liability for failure to seize "valuable evidence" at the scene of the disturbance. In our view, the ability to state a cause of action against the county depends on the establishment of a "special relationship" between plaintiff and county. This is a concept of tort duty common to both the alleged failure to render aid and the failure to collect evidence. Accordingly, our decision with respect to the former will apply equally to the latter.

undertake any affirmative action which contributed to, increased or changed the risk which otherwise already existed. (*Id.,* at p. 23.) No express or implied promises were made by the officers indicating they would render aid. Nothing in the complaint suggests that plaintiff or anyone else held the subjective belief that emergency aid would be rendered by the officers. The pleading merely states that plaintiff was injured and in need of emergency care, but did not get it. In no sense can a "special relationship" be inferred from such a bald assertion. (See *State of California* v. *Superior Court* (1984) 150 Cal.App.3d 848, 862 [197 Cal.Rptr. 914].)

Nor does it avail plaintiffs that Mr. Rose was in a position of "dependency." Certain courts appear to have found a special relationship where the claimant was unusually dependent upon the police officer for assistance. (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 207 [185 Cal.Rptr. 252, 649 P.2d 894]; *Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 780 [139 Cal.Rptr. 82].) Each of these cases, however, must be interpreted in light of *Williams* and with a full appreciation of their factual context. In *Davidson,* for example, plaintiff was stabbed in a public laundromat at a time when, unbeknown to her, the premises were under police surveillance. The court found no duty to act, even though the police failed to warn plaintiff after observing their suspect enter the premises. " 'Absent an indication that the police had *induced decedent's reliance* on a promise, express or implied, that they would provide her with protection, it must be concluded that no special relationship existed and that appellant has not stated a cause of action.' " (Italics added.) (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 206, quoting with approval from *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6, 10 [120 Cal.Rptr. 5].) Accordingly, allegations of dependency alone are insufficient to state a cause of action.

All of the cases relied upon by plaintiffs are distinguishable either by the element of reliance or by the fact that defendant's actions in some manner increased the risk of harm to plaintiff.[5] In *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82], for example, highway patrolmen, coming to the aid of stranded motorists, placed their car with flashing lights behind two other cars stalled on the freeway. After calling for a tow truck, the officers withdrew without warning; they did not wait for the tow truck to line up behind the stalled cars or provide alternative protection using flares. Moments later, one of the stalled cars was hit, causing injury to the persons standing nearby. In reviewing *Mann,* the Supreme Court noted that "the officers' conduct contributed to, increased, and changed the risk which

---

[5] Initially we note that plaintiffs rely on *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799]. *Clemente,* however, has been expressly disapproved by *Williams.* (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 28, fn. 9 [192 Cal.Rptr. 233, 664 P.2d 137].)

would have otherwise existed. They stopped to investigate and they took affirmative steps to provide assistance, lulling the injured parties into a false sense of security and perhaps preventing other assistance from being sought." (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 25.)

In *Pamela L.* v. *Farmer* (1980) 112 Cal.App.3d 206 [169 Cal.Rptr. 282], a special relationship was found where a wife, knowing her husband had a history of sexually molesting children, invited plaintiff children to use her swimming pool, representing that their pool was safe. In this nonpolice case, defendant wife acted affirmatively and induced detrimental reliance.

*Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82 [172 Cal.Rptr. 461], also is inapposite. The police had stopped a vehicle containing three occupants, all of whom were intoxicated. Although they arrested the driver, the police failed to take any action to prevent the other occupants from driving the car. One of the other occupants in fact did drive the car, ultimately resulting in an accident causing injury to innocent third persons. The court found that once the officers undertook their investigation, they were no longer immune from liability for their negligence. ██ ██ fn. ██ ██ Although not so expressly stated in the opinion, it was manifestly clear the *Green* court determined that since the conduct of the officers foreseeably increased the risk of harm to the public generally, there was a corresponding duty to act with due care.[6]

Lastly, plaintiffs cite *Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882 [182 Cal.Rptr. 73], dealing with a public entity's liability for dangerous conditions on public property, specifically, a riptide at a public beach. The complaint alleged that although the city voluntarily provided lifeguard services at the beach, it created a dangerous condition in negligently failing to post dangerous areas of the surf. In absence of such posting, plaintiffs' decedent assumed the area was safe for swimming. In finding a

---

[6]One must read *Green* in light of *Williams*. To the extent *Green* relied on *Clemente,* the decision is on infirm ground. Although *Williams* expressly disapproved *Clemente, Green* probably is still valid so long as its concept of duty is not extended beyond the two circumstances acknowledged by *Williams*: "[A person] is under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 23.)

*Green* is also distinguishable from the present case in that there plaintiffs pleaded that various municipal and police department enactments imposed a mandatory duty on the officers to remove the car keys or otherwise disable the vehicle. (*Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82, 89-90 [172 Cal.Rptr. 461].) Such allegations relieved plaintiffs of the need to allege the existence of a special relationship to establish the tort duty to take action. (*State of California* v. *Superior Court, supra,* 150 Cal.App.3d at p. 863.) Other than the attempt to plead a duty under Penal Code section 13518, discussed *infra,* plaintiffs in this case made no such allegations.

special relationship between the drowned woman and the city, the court emphasized the element of reliance: "Under the circumstances at bench, where a public entity voluntarily assumes a protective duty toward certain members of the public, even though there is no liability for its acts or omissions, upon undertaking the action on behalf of the public and *inducing public reliance,* the entity will be held to the same standard of care as a private individual or entity. (*Hartzler* v. *City of San Jose* (1976) 46 Cal.App.3d 6, 10 [120 Cal.Rptr. 5]; *Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 780, fn. 6 [139 Cal.Rptr. 82].)" (Italics added.) (*Id.,* at p. 887.)

The failure of plaintiffs in the instant case to plead that the police conduct either increased plaintiff's risk of harm or induced plaintiff's reliance to his detriment brings this case squarely within *Williams.* Accordingly, the trial court properly sustained defendant's general demurrer.

## II

■ Plaintiffs in their fourth cause of action seek to impose liability pursuant to Government Code section 815.6,[7] for county's failure to meet the mandatory obligations imposed by Penal Code section 13518.[8] Section 13518 generally requires all peace officers to be trained in first aid and cardiopulmonary resuscitation. Such mandatory training, argue plaintiffs, makes no sense unless there is a corresponding mandatory duty to *use* that training.

We reject plaintiffs' contention. If the Legislature had desired to impose upon law enforcement the mandatory duty to render aid, it could easily have said so. Section 13518 imposes only one affirmative duty—the duty to receive training in first aid. Plaintiffs' pleading having alleged no breach of that duty, it is therefore outside the "mandatory duty" provisions of Government Code section 815.6. (*Roseville Community Hosp.* v. *State of California* (1977) 74 Cal.App.3d 583, 587-588 [141 Cal.Rptr. 593]; *State of California* ex rel. *Dept. of Rehabilitation* v. *Superior Court* (1982) 137 Cal.App.3d 282, 285-286 [187 Cal.Rptr. 1].)

---

[7]Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

[8]Penal Code section 13518, subdivision (a), provided: "All [peace officers] shall be trained to administer first aid, including, but not limited to, cardiopulmonary resuscitation. Satisfactory completion of a refresher course in cardiopulmonary resuscitation and other first aid every three years shall also be required. . . ." (Stats. 1979, ch. 228, § 1, p. 481, eff. July 9, 1979.)

## III

 Normally, where, as here, plaintiffs do not challenge on appeal the court's order denying leave to amend, that issue is deemed waived on appeal. (*Federer* v. *County of Sacramento* (1983) 141 Cal.App.3d 184, 186 [190 Cal.Rptr. 187]; *Solano Concrete Co.* v. *Lund Constr. Co.* (1976) 64 Cal.App.3d 572, 575 [134 Cal.Rptr. 552].) If the complaint is insufficient upon any ground properly specified in the demurrer, the order of dismissal must be sustained. (*Stratford Irr. Dist.* v. *Empire Water Co.* (1941) 44 Cal.App.2d 61, 65 [111 P.2d 957].)

 We note, however, that the pleadings at issue all were filed prior to the decision in *Williams*. In view of the significance of *Williams* in deciding the present controversy, it is only fair that plaintiffs be given an opportunity to state a cause of action under standards expressed in that case. (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 28.)

The judgment is reversed, with directions to permit plaintiffs to file an amended complaint, should they ask leave to do so.

Blease, Acting P. J., and Carr, J., concurred.