*949 OPINION OF THE COURT
Randolph Jackson, J.
The motion of the defendant, New York City Transit Authority, for judgment non obstante veredicto in this personal injury suit is granted. The plaintiff, a sympathetic figure at seven years of age, running in and out of the courtroom missing one arm, was awarded a jury verdict on October 3, 1991 of $550,000 upon the jury’s finding of liability against the New York City Transit Authority, arising from an incident occurring on July 4, 1985 when his mother committed suicide by throwing herself under the wheels of a moving subway train with him (then 11 months old) in her arms.
The liability was based upon a finding that a New York City Transit Police Officer was negligent in his handling of the mother in an encounter shortly before the suicide.
FACTS
On July 4, 1985 at approximately 3:35 a.m., a motorman pulling into the Van Siclen Avenue (elevated) station on thé "J” line noticed something at the end of the platform. He summoned help and went to investigate. At the end of the platform, past the gate and down the steps, he saw a woman, Luz Figueroa, on the roadbed near the tracks holding a baby in her arms. He instructed her to come up the steps to the platform and she complied.
By this time, the conductor and a Transit Police Officer present on the train had arrived. The motorman turned the lady over to the officer. The officer asked the woman three questions:
1. "Are you all right?” To which she answered "yes”;
2. "Do you want to ride on the train?” To which she answered "no”, and;
3. "Do you want to go home?” To which she answered "yes”.
The officer then got back on the train and watched the
woman begin to descend the stairs of the elevated platform as he departed the station on the train. At some point in time shortly thereafter, Mrs. Figueroa, with her infant, Alex Figueroa, still in her arms, returned to the platform and again entered upon the roadbed (this time on the opposite side of the tracks) and committed suicide. She was struck by a northbound "J” train as it was entering the station. Mrs. Figueroa was killed instantly. Her infant son was propelled to the *950 street below, fortunately surviving the accident, but suffering an amputation of his arm.
DISCUSSION
Defendant’s motion for summary judgment was presented to this court on the eve of trial. As a jury had already been selected, decision was reserved on the motion and it is now merged with defendant’s posttrial motion to set aside the jury’s verdict.
The plaintiffs oppose defendant’s motion on two distinct theories. First, plaintiffs contend that the Transit Police Officer and other Transit Authority personnel breached their duty to take affirmative action on behalf of the Figueroas to remove them from danger. Plaintiffs claim that the police officer violated police procedure by failing to take such action.[1]
The plaintiffs’ other theory is that any affirmative action that the officer did take was performed negligently and directly led to the ensuing tragedy.
The defendant’s position is that the New York City Transit Authority owed no duty to Alex Figueroa to prevent his mother from attempting to murder him, and that the police officer took no affirmative action with respect to the Figueroas. Under the current state of the law, this court is constrained to agree.
"The New York City Transit Authority owes no duty to protect a person on its premises from assault by a third person, absent facts establishing a special relationship between the authority and the person assaulted.” (Weiner v Metropolitan Transp. Auth., 55 NY2d 175, 178 [1982].)
In order for a "special relationship” to exist, the following elements must be present: (1) an assumption by the municipality through promises or actions of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking. (Kircher v City *951 of Jamestown, 74 NY2d 251 [1989]; Cuffy v City of New York, 69 NY2d 255 [1987].)
In analyzing the facts of the case at bar, it is clear that the Transit Authority, by the officer’s discussion with Mrs. Figueroa, did not assume, through promises or actions, an affirmative duty to act on the child’s behalf, nor did the officer have knowledge that inaction could lead to harm. The appellate courts have provided considerable guidance in this area.
The case of Yearwood v Town of Brighton (101 AD2d 498 [4th Dept 1984], affd 64 NY2d 667 [1984]) is instructive on the law as it applies to the instant matter.
In Yearwood (supra), police officers investigated a report of domestic difficulties at the home of plaintiff and her husband and their two children. One of the officers learned that the husband had beaten his wife, and had threatened to kill her and to burn down the house. Plaintiff told the officer that she feared for the children, and she and her lawyer requested that the officer arrest the husband and remove the children from the home. The officer told the attorney that he could not make an arrest because he did not witness the assault and there were no visible injuries. The officer also told plaintiffs lawyer that she could make out a complaint for the husband’s arrest, but not until Monday. The officer contacted his sergeant, who instructed him to go to the Yearwood home to see if he could remove the children without objection by Yearwood and, if not, to remove them over the objection only if he found that the children had been abused or threatened, or that Yearwood could not care for them properly.
Two officers accompanied the plaintiff back to her home where, at first, the husband yelled at them through a window and refused to open the door. He threatened a "showdown”, but finally let them in. The plaintiff then showed the officer that her clothes had been slashed and that the husband had also smashed the window of her car. The plaintiff claimed that the police did nothing with respect to attempting to remove the children from the house. Thereafter, the plaintiff left with the policemen, leaving the children behind. At approximately 3:30 p.m. the following morning, the husband set fire to the house killing the two children.
Justice Hancock, writing for the court, stated that (101 AD2d, at 502): "In essence, the claim here is that the police were negligent in not perceiving Year wood’s state of mind and recognizing that his threat to burn the house down was meant *952 to be taken seriously * * * Here, with the benefit of hindsight, it appears that, both before and after the police visit, so long as they were in the house with Yearwood, the children were exposed to a danger, the gravity of which was not appreciated. Tragically, the police did not act to reduce the danger. But they did nothing to enhance it.”
In the instant case, plaintiffs make a very similar claim. Plaintiffs argue that the Transit Police Officer should have perceived the irrational state of mind of Mrs. Figueroa and should have known that she posed an immediate danger to her child by virtue of the fact that she was on the trackbed.
Here, as in Yearwood (supra), with the benefit of hindsight, it is clear that Mrs. Figueroa was exposing her son to extreme danger, the gravity of which was not appreciated. As the court stated (supra, at 502): "Police officers in exercising their judgment * * * cannot be expected to predict and prevent irrational behavior, and the law does not impose such a responsibility * * * the failure of the police here to perceive danger is, without more, not enough.”
The courts could not expect the police officer in the case at bar to know that inaction might lead to harm (see, Kircher v City of Jamestown, supra). A special relationship, therefore, did not exist.
The facts of the case at bar are also similar to those in Serrano v City of New York (150 AD2d 297 [1st Dept 1989]). In that case, the decedent and two other people boarded a subway train at the South Ferry station; they exited that train at the Chambers Street stop and waited on the northbound platform for another train to Times Square; while waiting there, they all shouted, ran around and played tag. At that time, decedent was obviously intoxicated and/or under the influence of drugs. After about five minutes, a New York City Transit Police Officer appeared and requested them to open their jackets, questioned them as to where they were going, asked them to turn around so that he could look them over and finally, that officer told them to be quiet. Subsequently, they boarded a train bound for Times Square and while a passenger on that train, the decedent arose from his seat (which was located next to an open door between the cars) to say something to his friend, when a sudden lurch of the fast-moving train caused decedent to stumble backwards and fall through the open door.
The court held in Serrano (supra, at 300), that the plaintiff *953 " 'failed to demonstrate any factual basis for the existence of a special duty’ ”. In Serrano, as in the case at bar, the Transit Authority policeman questioned the deceased and decided to leave him on the platform. In both cases, the policemen’s failure to act allowed the subjects to expose themselves to dangerous situations which led to their deaths, but no special relationship existed because the officers did not assume, through promises or actions, an affirmative duty to act on behalf of the injured party (Kircher v City of Jamestown, supra). It is important to note that in Serrano the subject’s disability (intoxication) was obvious and there was no duty to act. Mrs. Figueroa’s disability was not readily apparent.
In Pinkney v City of New York (50 AD2d 928 [2d Dept 1975]), the Appellate Division, Second Department, held that a policeman had no duty to remove the plaintiff from a dangerous area even though the officers had stopped to inquire. In that case, plaintiffs automobile had stalled at 11:30 p.m. in the path of oncoming traffic. With both the trunk lid and the front hood up, he set to work trying to get the car started. At that moment, a marked city police car with two uniformed policemen inside it stopped alongside. The driver asked him what he was doing; he told him. With that, the police officer said "Hurry up and get it out of here.” The police car drove off leaving the plaintiff and the car in its dangerous and exposed condition. As was readily foreseeable, a vehicle came by and crashed into plaintiff’s automobile, inflicting serious injury upon the plaintiff.
Similarly, in the present case, although the jury found the Transit Police Officer was guilty of using poor judgment in allowing Mrs. Figueroa to remain in the vicinity of the subway platform, he had no duty to act.
During the officer’s brief inquiry of Mrs. Figueroa, he gave no indication that he intended to help her in any way. The Figueroas’ contention that the Transit Authority is negligent because the police officer failed to remove the plaintiffs from the area and conduct a further investigation must fail because the police officer never assumed the duty to act on their behalf. A "special relationship” was not created.
Plaintiffs also claim that the central feature setting this case apart from other special duty/special relationship cases is that plaintiffs’ theory of liability is not only that the police did not respond properly to a given scenario, but rather that after the police officer responded he improperly performed police *954 functions in an affirmatively negligent way. Plaintiffs contend that in such circumstances, special duty rules do not apply and ordinary negligence principles determine the liability of the municipal defendant.
While this court agrees that police officers are liable for their acts of affirmative negligence (see, Parvi v City of Kingston, 41 NY2d 553 [1977]; Zibbon v Town of Cheektowaga, 51 AD2d 448 [4th Dept 1976]; Maloney v Scarfone, 25 AD2d 630 [1st Dept 1966]), the police officer in this case did not take any affirmative action.
The plaintiffs make special mention of Parvi v City of Kingston (supra) in support of their argument. Their reliance on Parvi is misplaced.
In Parvi (supra), several individuals were obviously intoxicated and acting in a boisterous manner. Policemen showed up at the scene and took two of them into custody. The police officers then transported them to an unlit golf course outside the city limits. It was the officers’ intention that by the time they walked back into town, they would be in a sober condition. While in transit, the individuals asked the police to let them off at another location that they were familiar with. The officers refused. The place where the officers finally let them out was 350 feet from the New York State Thruway. In order to get back to their home town (Kingston), they would have to cross the Thruway. While crossing the Thruway, both individuals were struck by a passing motorist, killing one and severely injuring the other.
The court in Parvi stated (supra,, at 559): "we confront directly the duty of the police officers to persons under the influence of alcohol who are already in their custody * * * The case law is clear that, even when no original duty is owed to the plaintiff to undertake affirmative action, once it is voluntarily undertaken, it must be performed with due care”.
The opinion goes on to quote Restatement (Second) of Torts § 324: " 'One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor’s charge or (b) the actor’s discontinuing his aid or protection, if by so doing, he leaves the other in a worse position than when the actor took charge of him.’ ” (Supra, at 559.)
It is clear that Parvi (supra) does not apply to the instant case.
*955 First, the court specifically states that it is only addressing a situation where a person under a disability is already in police custody. Mrs. Figueroa was never in police custody. Furthermore, in Parvi, the disability (intoxication) was obvious, while in the case at bar, Luz Figueroa’s disability was far from obvious and, as a matter of law, a police officer "cannot be expected to predict and prevent irrational behavior” (Yearwood v Town of Brighton, supra, at 502).
The one factual circumstance that all of the cases cited by plaintiffs with regard to affirmative negligence by police officers have in common is that the police affirmatively either placed the injured party in a dangerous situation or enhanced the danger that the injured party was exposed to. As Chief Justice Cardozo stated in Moch Co. v Rensselaer Water Co. (247 NY 160, 168 [1928]), "[t]he query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or had stopped where inaction is at most a refusal to become an instrument for good”.
If one can criticize the conduct of the police officer in this case, it would be due to his total lack of action on the part of the Figueroas. As was discussed above, the Transit Authority is not liable for this failure to act because no special relationship existed. This police officer took no affirmative action. He briefly questioned Mrs. Figueroa and left her at the top of the stairs heading down from the platform. It was Mrs. Figueroa who put herself and the baby at risk. While it is true that the Transit Authority officer might have done more to remove the Figueroas from the area, he did not cause Mrs. Figueroa to reenter the track area and to commit suicide and the attempted murder of her baby.
It seems clear from case law that defendant New York City Transit Authority’s motion pursuant to CPLR 4404 (a) granting it judgment notwithstanding the verdict as a matter of law must be, and it hereby is granted. The jury award in favor of plaintiff, Alex Figueroa, is hereby vacated.[2] In light of the result herein, the court takes no action on plaintiffs’ motion to set aside the verdict as inadequate, or in structuring a judgment pursuant to CPLR article 50-B.

. Plaintiffs’ counsel conceded in open court that the conductor and the operator of the first train did nothing wrong and did the right thing by turning the matter over to the Transit Police Officer. Additionally, plaintiffs’ counsel did not request that the jury consider the possible negligence of these Transit Authority employees. Accordingly, this issue will not be considered here.

. The wrongful death action on behalf of the estate of Luz Figueroa had previously been dismissed on other grounds.