970 So.2d 864 (2007)
Kelly WALLACE, as Personal Representative, etc., Appellant,
v.
Ed DEAN, Sheriff of Marion County, Appellee.
No. 5D06-4289.
District Court of Appeal of Florida, Fifth District.
November 30, 2007.
Rehearing Denied December 21, 2007.
*865 Sharon H. Proctor, Lake Saint Louis, MO, and Mark A. Avera and James P. Gainey, of Avera & Smith, LLP, Gainesville, for Appellant.
Bruce R. Bogan, of Hilyard, Bogan & Palmer, P.A., Orlando, for Appellee.
ORFINGER, J.
Kelly Wallace ("Ms. Wallace"), as personal representative of the estate of her mother, Brenda Wallace ("decedent"), appeals the trial court's dismissal of her wrongful death action against Ed Dean, in his official capacity as Sheriff of Marion County. Ms. Wallace contends that the trial court erroneously concluded that her complaint failed to state a cause of action and that the Sheriff was entitled to sovereign immunity. As explained below, we affirm.
In her complaint, Ms. Wallace alleged that on the day of the incident, she placed numerous phone calls to the decedent, all of which went unanswered. Because she lived out of state and could not personally check on her, Ms. Wallace called Marjorie *866 Ginder,[1] one of decedent's neighbors, and asked her to check on the decedent. Ms. Ginder repeatedly knocked on the doors and windows of the decedent's home, and when she received no response, called 911. Two Marion County deputy sheriffs responded to the 911 call. One of the deputies entered the decedent's home through an unlocked window and let the other deputy, Ms. Ginder, and Ms. Ginder's father into the home. They discovered the decedent on the couch, breathing but unresponsive, even when the officers called her name loudly and shook one of her legs. Ms. Ginder's father suggested that the decedent might be in a diabetic coma, but, according to the complaint, the deputies told him that "one does not snore if in a diabetic coma." Although Ms. Ginder suggested that they call an ambulance, the deputies did not call for medical assistance. Instead, the deputies suggested that Ms. Ginder leave the decedent's door unlocked and return to check on her later. After the deputies left, Ms. Ginder called Ms. Wallace and told her that the decedent was sleeping. The next morning, Ms. Ginder again found the decedent unresponsive, and, once more called 911. Emergency medical personnel responded to the call and transported the decedent to the hospital where she died several days later, without regaining consciousness.
Ms. Wallace subsequently filed suit against Sheriff Dean for the wrongful death of the decedent. The complaint alleged that the decedent died as a direct and proximate result of the negligent actions of the responding deputies. After several amendments, the trial court dismissed Ms. Wallace's complaint with prejudice. The court concluded that based on the allegations of the complaint, Sheriff Dean owed no common law duty of care to the decedent; that law enforcement officers responding to well-being checks are performing discretionary law enforcement functions; and that no "special relationship" existed between the decedent and the Marion County deputies at the time the deputies were at the decedent's home. The trial court also concluded that the claim was barred by the doctrine of sovereign immunity. This appeal followed.
Ms. Wallace contends that the Sheriff did owe a common law duty of reasonable care to the decedent. According to Ms. Wallace, the duty arose because (1) once the deputies undertook to check on the well-being of the decedent, they had a duty to do so with reasonable care; (2) the deputies' negligent actions increased the risk of harm to the decedent; and (3) the decedent's neighbor relied on the deputies' actions and statements and, as a consequence, failed to call an ambulance. Further, Ms. Wallace argues that the claim is not barred by sovereign immunity.
"[T]he standard of review of an order dismissing a complaint with prejudice is de novo." Palumbo v. Moore, 777 So.2d 1177, 1178 (Fla. 5th DCA 2001). We confine our review to the four corners of the complaint, draw all inferences in favor of the pleader, and accept as true all well-pled allegations. Huet v. Mike Shad Ford, Inc., 915 So.2d 723, 725 (Fla. 5th DCA 2005).
"[T]here can be no governmental liability unless a common law or statutory duty of care existed that would have been applicable to an individual under similar circumstances." Henderson v. Bowden, 737 So.2d 532 (Fla.1999). "[O]ur courts have consistently required plaintiffs suing *867 governmental entities for negligence to allege and prove that the defendant breached a common-law or statutory tort duty owed to the plaintiff individually and not a tort duty owed to the public generally." Holodak v. Lockwood, 726 So.2d 815, 816 (Fla. 4th DCA 1999). Here, Ms. Wallace does not contend that there was any statutory duty owed to the decedent. Consequently, the threshold issue for us to determine is whether the deputies had a common law duty to act with care toward the decedent in performing the well-being check.
Generally, enforcement of the law and protection of public safety are discretionary duties, for which there is no common law duty of care owed to any particular individual. City of Daytona Beach v. Palmer, 469 So.2d 121, 122-23 (Fla.1985); Trianon Park Condo. Ass'n v. City of Hialeah, 468 So.2d 912, 917-21 (Fla.1985). One exception to the general no-duty rule exists when a special relationship exists between a government actor and an individual. Everton v. Willard, 468 So.2d 936, 938 (Fla.1985); see also City of Ocala v. Graham, 864 So.2d 473, 476-77 (Fla. 5th DCA 2004) (holding that "sovereign immunity may disappear and liability may be imposed when a special relationship exists between the government actor and the tort victim"); Pierre v. Jenne, 795 So.2d 1062, 1063 (Fla. 4th DCA 2001) ("Liability may be imposed only where a special relationship exists between the government actor and the tort victim."). To establish a special relationship between a government actor and an injured party, the injured party must plead and prove:
1) an express promise or assurance of assistance by the government actor;
2) justifiable reliance on the promise or assurance of assistance by the injured party, or one closely associated with the injured party; and,
3) harm suffered because of the reliance upon the express promise or assurance of assistance.
Graham, 864 So.2d at 477 (quoting Pierre, 795 So.2d at 1064).
Other situations exist that can give rise to government liability. For example, in Pollock v. Florida Department of Highway Patrol, 882 So.2d 928, 935-36 (Fla. 2004), the Florida Supreme Court observed that:

[A] special tort duty does arise when law enforcement officers become directly involved in circumstances which place people within a single `zone of risk' by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger. The premise underlying this theory is that a police officers decision to assume control over a particular situation or individual or group of individuals is accompanied by a corresponding duty to exercise reasonable care. . . .
Florida courts have also determined that a special duty is established when a police officer makes a direct representation to a plaintiff, or one so closely involved with the plaintiff that their interests cannot be separated, that he or she will take a specified law enforcement action.
(Internal citations omitted; emphasis added).
Similarly, in Henderson, the court recognized that "`[u]nder our case law, our courts have found liability or entertained suits after law enforcement officers took persons into custody, otherwise detained them, deprived them of liberty or placed them in danger.'" 737 So.2d at 536 (quoting Kaisner v. Kolb, 543 So.2d 732, 734 (Fla.1989)). The court explained that:

*868 If there is no duty to go to the assistance of a person in difficulty or peril, there is at least a duty to avoid any affirmative acts which make his situation worse. . . . [I]f [a law enforcement officer] does attempt to aid [a person in peril], and takes charge and control of the situation, he is regarded as entering voluntarily into a relation which is attended with responsibility.
737 So.2d at 537 (citing W. Page Keeton, et al., Prosser & Keeton on the Law of Torts, § 53, at 378 (5th ed.1984)) (emphasis added).
Florida courts have not directly addressed whether responding to a 911 call to conduct a well-being check constitutes "an express promise or assurance of assistance." However, we glean from the authorities that, as a general proposition, no tort liability exists for discretionary law enforcement duties unless the government actor places the injured party in a "zone of risk," assumes control over a situation to the exclusion of others, or makes representations to the injured party (or their agent) that specific law enforcement action will be taken, thereby creating the special relationship described in Everton and Graham. In this case, the essence of Ms. Wallace's argument is that if law enforcement officers undertake a well-being check, and, during the course of that check, they discover a person wholly dependent upon them for emergency aid, they are then under an affirmative duty to render that aid. We disagree.
Assuming the facts pled in the second amended complaint as true, the deputies took no affirmative action which contributed to, increased or changed the risk to the decedent, which otherwise already existed. See Rose v. County of Plumas, 152 Cal. App.3d 999, 199 Cal.Rptr. 842 (1984). In no sense can it be said that the officers placed the decedent within a "zone of risk," nor can it be said that the deputies assumed control over this situation causing anyone, including Ms. Ginder, to detrimentally rely on the deputies' representations. No express or implied promises were made by the deputies indicating that they would render aid, nor did they prohibit Ms. Ginder, her father, or Ms. Wallace from calling an ambulance.[2]Pollock and Henderson make clear that the deputies' obligation was simply not to increase the risk of harm to the decedent or cause her, or someone acting on her behalf, to rely on their representations to her detriment.[3]
Public policy supports this conclusion. If law enforcement agencies are found to have liability under these circumstances, *869 they may stop making well-being checks, thereby avoiding any liability. If they do respond, in order to avoid liability, they likely would direct that everyone be transported to the hospital, further taxing local hospitals and emergency services. Both outcomes harm the public. Though some of the decisions made by law enforcement in the course of making well-being checks may be wrong, overwhelmingly, the results of such checks are helpful and should be continued.
While the actions of the deputies, if they occurred as alleged, may have demonstrated poor judgment or were contrary to some moral obligation, their failure to act created no legal duty and cannot be the basis of a negligence action. Because we find that the Sheriff owed no duty to the decedent, we need not discuss the issue of sovereign immunity. The order of dismissal is affirmed.
AFFIRMED.
GRIFFIN and EVANDER, JJ., concur.
NOTES
[1] Marjorie Ginder is referred in the parties' briefs as both "Ms. Ginder" and "Ms. Gimder."
[2] For the purpose of this opinion, we assume, without deciding, that Mrs. Ginder was so closely involved with the decedent that their interests cannot be separated and that she was acting on the decedent's behalf. See Pollock, 882 So.2d at 936.
[3] Other courts have also rejected the argument that a duty to render aid to another who is helpless exists when law enforcement officials are on the scene but have not undertaken a rescue. See Rose, 152 Cal.App.3d 999, 199 Cal.Rptr. 842 (rejecting claim that plaintiff, injured in barroom brawl, was owed affirmative duty to arrange appropriate emergency care by police officers who investigated incident); Figueroa ex rel. Figueroa v. New York City Transit Auth., 152 Misc.2d 948, 579 N.Y.S.2d 831 (N.Y.Sup.Ct.1991) (determining that transit officer did not take charge of mother or her infant after questioning mother who was standing on elevated road bed near tracks; mother told officer she wanted to go home and left station; officer departed subway station and mother was later killed and infant injured when mother returned to station and stood on tracks in face of oncoming train); see also Garofalo v. Lambda Chi Alpha Fraternity, 616 N.W.2d 647 (Iowa 2000) (finding that fraternity brothers of severely intoxicated pledge did not take charge of pledge when they took him to room, placed him on bed and left him after one-half hour).