WELLS, J.,
dissenting.
I dissent because I would (1) discharge jurisdiction, or (2) affirm the well-reasoned decision of the Fifth District Court of Appeal.
(1) In its decision, the Fifth District makes the specific point that “Florida courts have not directly addressed whether responding to a 911 call to conduct a well-being check constitutes ‘an express promise or assurance of assistance.’ ” Wallace v. Dean, 970 So.2d 864, 868 (Fla. 5th DCA 2007). The majority here points to no conflicting authority. Thus, without conflict on the issue in this case, the case should be discharged.
(2) In view of the majority’s decision on jurisdiction, I write to explain why I believe that the Fifth District is correct that under the facts alleged in the complaint, courts should not find a duty owed by the Marion County Sheriff. I further conclude that the Fifth District is correct in its concern about the potential adverse effect that the finding of a duty owed by the Sheriff on the basis of these allegations will have on the providing of 911 services by sheriffs throughout Florida. I expressly do not agree with the majority’s footnote 9.
In its opinion, the Fifth District made the following essential succinct points:
Florida courts have not directly addressed whether responding to a 911 call to conduct a well-being check constitutes “an express promise or assurance of assistance.” However, we glean from the authorities that, as a general proposition, no tort liability exists for discretionary law enforcement duties unless the government actor places the injured party in a “zone of risk,” assumes control over a situation to the exclusion of others, or makes representations to the injured party (or their agent) that specific law enforcement action will be taken, thereby creating the special relationship described in Everton [v. Willard, 468 So.2d 936 (Fla.1985),] and [City of Ocala v.] Graham, [864 So.2d 473 (Fla. 5th DCA 2004) ]. In this case, the essence of Ms. Wallace’s argument is that if law enforcement officers undertake a well-being check, and, during the course of that check, they discover a person wholly dependent upon them for- emergency aid, they are then under an affirmative duty to render that aid. We disagree.
Assuming the facts pled in the second amended complaint as true, the deputies took no affirmative action which contributed to, increased or changed the risk to the decedent, which otherwise already existed. See Rose v. County of Plumas, 152 Cal.App.3d 999, 199 Cal.Rptr. 842 *1056 (1984). In no sense can it be said that the officers placed the decedent within a “zone of risk,” nor can it be said that the deputies assumed control over this situation causing anyone, including Ms. Ginder, to detrimentally rely on the deputies’ representations. No express or implied promises were made by the deputies indicating that they would render aid, nor did they prohibit Ms. Ginder, her father, or Ms. Wallace from calling an ambulance. Pollock [v. Florida Department of Highway Patrol, 882 So.2d 928 (Fla.2004),] and Henderson [v. Bowden, 737 So.2d 532 (Fla.1999),] make clear that the deputies’ obligation was simply not to increase the risk of harm to the decedent or cause her, or someone acting on her behalf, to rely on their representations to her detriment.
Public policy supports this conclusion. If law enforcement agencies are found to have liability under these circumstances, they may stop making well-being checks, thereby avoiding any liability. If they do respond, in order to avoid liability, they likely would direct that everyone be transported to the hospital, further taxing local hospitals and emergency services. Both outcomes harm the public. Though some of the decisions made by law enforcement in the course of making well-being checks may be wrong, overwhelmingly, the results of such checks are helpful and should be continued.
While the actions of the deputies, if they occurred as alleged, may have demonstrated poor judgment or were contrary to some moral obligation, their failure to act created no legal duty and cannot be the basis of a negligence action. Because we find that the Sheriff owed no duty to the decedent, we need not discuss the issue of sovereign immunity. The order of dismissal is affirmed.
Wallace, 970 So.2d at 868-69 (emphasis added) (footnotes omitted). I agree.
Furthermore, I conclude that the majority opinion is an extension of the “undertaker’s doctrine” to such an extent that it will expose many activities carried out by government employees, as well as neighbors, friends, and passersby, to unexpected and unjust liability. It must follow that if there was a duty undertaken by the Sheriffs deputies in this case, there was likewise a duty on the part of the neighbor who “undertook” to cheek on the plaintiffs mother. Since the neighbor did not call an ambulance, just as the Sheriffs deputies did not call an ambulance, any liability will be subject to apportionment. Fabre v. Marin, 623 So.2d 1182 (Fla.1993).
An essential element of the undertaker’s doctrine includes that harm is suffered because of the reliance upon the undertaking. In this case, the allegations were that a neighbor of the plaintiffs deceased mother was called by the plaintiff to check on the mother and that the neighbor “accepted the undertaking.” When the neighbor received no response to knocking on the mother’s door, the neighbor called 911. There are no allegations as to what the neighbor told the 911 operator. Two deputies responded to the 911 call. The neighbor provided background information (of what it consisted is not alleged) to the deputies. One of the deputies entered the mother’s home through an unlocked window and unlocked the door for the other deputy, the neighbor, and the neighbor’s father to enter the home. The mother was observed by the deputies, the neighbor, and the neighbor’s father in a bed set up in the dining room. The deputies attempted to arouse the mother, but the mother was unresponsive.
The neighbor suggested to the deputies that an ambulance be called, but the deputies “made repeated assurances” to the neighbor that decedent was merely “sleeping.” The neighbor’s father suggested to *1057 the deputies that “perhaps the decedent was in a diabetic coma.” The complaint then alleges:
The deputies rebuffed the suggestion, again improperly evaluating the decedent’s medical condition, telling Ms. Gin-der’s father than one does not snore if in a diabetic coma. Ms. Ginder, on behalf of the Plaintiff, again justifiably relied on the repeated assurance of the deputy that Ms. Wallace was merely sleeping.
Thereafter, the complaint further alleges that “Ms. Ginder and her father assumed that the deputies responded to these types of calls for service all the time, and relied on their medical evaluation.”
It appears to me that a fundamental flaw in finding a cause of action against the Sheriff on the basis of these allegations is the underlying premise that the deputies had a duty to make a correct medical evaluation. It was the medical evaluation that is alleged to have been what the neighbor relied upon. What our case law actually requires is that for the Sheriff to be liable, there must have been a common law or statutory duty of care that would have been applicable to an individual under similar circumstances. In Everton v. Willard, 468 So.2d 936, 938 (Fla.1985), this Court clearly held that “[tjhere has never been a common law duty of care owed to an individual with respect to the discretionary judgmental power granted a police officer to make an arrest and to enforce the law.” The Court went on to state: “We recognize that if a special relationship exists between an individual and a governmental entity, there could be liability of care owed to the individual.” Here, the majority must assume that the 911 call and the Sheriffs deputies responding created a “special relationship” between the Sheriff and the plaintiffs decedent. But even accepting a “special relationship,” the majority cites to no case law or statutory law which would place upon a nonmedical sheriffs deputy a duty to perform a medical evaluation to any standard other than a standard of ordinary care that would be expected of any nonmedically trained person. There is no allegation in the present complaint that what was requested of the 911 operator was other than that of non-medically trained sheriffs deputies. Nor is there any allegation that the Sheriffs deputies held themselves out to be medically trained and experienced. The only allegation is that the neighbor “assumed that the Sheriffs deputies responded to these types of calls all the time.” I conclude that such an alleged assumption by the neighbor is insufficient to create a duty on the Sheriffs deputies. On the basis of the complaint’s allegations, the only duty, if any, that our case law or statutory law would place on the deputy would be a duty of ordinary care, which would be the same duty that the neighbor could be found to have. I do not believe that either the deputies or the neighbor should be found to have a duty to make a medical evaluation and require the calling of an ambulance. But clearly the burden of not calling an ambulance under the circumstances should not be shifted to the Sheriff.
Likewise, I believe that it is questionable whether there was a special relationship between the Sheriffs deputies and the plaintiffs deceased. I believe that this situation should be found to be controlled by Everton. In Everton, a decision not to assist was held to be a discretionary decision. Here, the decision by the Sheriffs deputies was to not take custody of the plaintiffs deceased by calling an ambulance. This case is not like Henderson v. Bowden, 737 So.2d 532 (Fla.1999), in which we held there to be liability on the part of the sheriff because under the facts of that case, the sheriffs deputies did take control of the driver and created the risk. Here, the Sheriffs deputies only responded to what they found.
*1058 The undertaker’s doctrine should not be applicable to liability for either the Sheriff, the neighbor, or the neighbor’s father because it is unreasonable for the plaintiff to have relied upon the medical expertise of any of them. Reasonable reliance is essential to the undertaker’s doctrine.
CANADY, J., concurs.