700 So.2d 714 (1997)
Isac R. BOWDEN and Luna Dell Archie Haywood, individually, and as Co-Personal Representatives of the Estate of Robert Earl Bowden, Deceased, Appellants,
v.
Cal HENDERSON, as Sheriff of Hillsborough County, Appellee.
No. 96-02301.
District Court of Appeal of Florida, Second District.
September 3, 1997.
Rehearing Denied October 30, 1997.
R. Kent Lilly of Kent Lilly, P.A., Lakeland, for appellants.
Manuel J. Alvarez and Darrell D. Dirks of Rywant, Alvarez, Jones & Russo, Tampa, for appellee.
CAMPBELL, Acting Chief Judge.
Appellants Isac R. Bowden and Luna Dell Archie Haywood, individually, and as co-personal representatives of the Estates of Robert Earl Bowden, deceased, and Damon Lamar Bowden, deceased, challenge partial final summary judgments and final summary judgments entered in favor of appellee Cal Henderson, as Sheriff of Hillsborough *715 County. The actions on appeal were consolidated below. We reverse.
Appellants are the natural parents of the deceased brothers, Robert Earl Bowden and Damon Lamar Bowden. The tragic events which led to appellants' actions below began on the afternoon of August 7, 1992. It was an afternoon of partying and "joyriding" by three brothers, Jimmy Harold Bowden (19), Robert Earl Bowden (19), Damon Lamar Bowden (29), and their friend Brandon Thomas Lyons (18).
The significant events took place in the Brandon and Turkey Creek areas of Hillsborough County. The four friends were traveling from place to place and party to party in Brandon Lyons' 1988 Honda automobile, which was owned by Brandon's father, Thomas Lyons. As the evening progressed, some drugs and considerable alcoholic beverages were consumed by the four friends. Brandon, who had a reputation for rather quickly showing the effects of alcohol consumption, soon turned the driving over to Jimmy Bowden because Brandon considered himself "trashed."
At approximately 11:30 p.m., on August 7, 1992, on Turkey Creek Road (which runs north and south) East of Brandon, north of State Road 60 and just north of the intersection of Turkey Creek Road and Trapnell Road, Deputy Sheriff Gary Herman of the Hillsborough County Sheriff's Office stopped Lyons' 1988 Honda, which was then being operated by Jimmy Bowden. Deputy Herman had been advised by his dispatcher of a citizen's report concerning an intoxicated driver in a blue Honda with a tag number that matched the Lyons vehicle. When Deputy Herman observed the Honda vehicle, he radar-clocked its speed at 74 miles per hour in a 45 mile per hour speed zone. When the Lyons vehicle was stopped, Jimmy Bowden was driving, Brandon Lyons was occupying the front passenger seat and Robert and Damon Bowden were in the rear seat. After stopping the vehicle, several other sheriff's deputies in sheriff's vehicles arrived to assist Deputy Herman. Deputy Given Garcia was one of those assisting deputies. After Jimmy Bowden was given field sobriety tests at the scene, he was arrested for D.U.I., taken into custody by Deputy Herman and placed in the rear seat of Deputy Herman's vehicle. Jimmy Bowden was not the only one of the four who was intoxicated; Herman described both Damon and Robert as being intoxicated, with Robert appearing "almost passed out."
Brandon Lyons' deposition testimony was that he informed the various deputies at the scene that Jimmy was driving Brandon's car because he (Brandon) was too "trashed" to drive. The deputies deny having heard such a statement and deny having inquired as to why Jimmy was driving. The deputies recall instead that Brandon Lyons stated he was able to drive his car to the not-too-distant home of his parents. Two deputies indicated that they each gave Brandon Lyons one type of field sobriety test (horizontal gaze test). Both deputies indicated he passed the test. Expert witnesses, however, opine that the tests given to Brandon Lyons were not properly administered. Expert evidence also indicated that five hours after the arrest of Jimmy Bowden, blood drawn from Brandon Lyons, extrapolated back to the time of the arrest of Jimmy Bowden, showed Lyons' blood/alcohol level at that time to have been.165 grams (range .145 to .230). By comparison, Jimmy Bowden's subsequent chemical breath test indicated his blood/alcohol level at .107/.096. The testimony of the deputies indicated that although they concluded that Brandon Lyons was not intoxicated, they told him that he should drive his car back to a nearby Circle K at the intersection of Turkey Creek Road and Trapnell Road and use the public telephone there to call for his parents to come get Lyons and Robert and Damon Bowden.
After being temporarily detained at the scene of Jimmy Bowden's arrest, the deputies turned the vehicle over to Brandon Lyons and he, pursuant to the deputies' instructions, proceeded to the Circle K parking lot. After remaining there a few minutes, Lyons decided to drive away. As Lyons was driving away, Deputy Garcia drove through the Circle K parking lot and observed the Lyons vehicle pulling out onto Trapnell Road headed west. For whatever reason, Deputy Garcia immediately gave chase to the Lyons vehicle.
*716 The Garcia vehicle was a 1990, 8 cylinder, 5.0 liter, fuel injected, 170 horsepower Chevrolet Caprice that somehow never caught up with the Lyons 1988 Honda Civic. Deputy Garcia pursued the Lyons vehicle all the way from the Circle K store to the intersection of Trapnell Road and Jerry Smith Road (a distance of approximately 3/4 mile). The Lyons vehicle ran through the stop sign at the intersection of Trapnell Road and Jerry Smith Road, turned right and then proceeded north on Jerry Smith Road with Deputy Garcia in pursuit.
About a half-mile north of Trapnell Road, as Jerry Smith Road curves to the west, the Lyons vehicle failed to make the curve, continued north (off the roadway) and struck several trees. Damon Bowden and Lyons were ejected from the Lyons vehicle, and both Damon and Robert Bowden died as a result of injuries received. At the time of the accident, Deputy Garcia was close enough to view both the crash and the ejection of Damon Lamar Bowden and Lyons from their vehicle. During his pursuit of the Lyons vehicle, Deputy Garcia never activated his emergency lights or his siren. After being hospitalized for the injuries he received, Brandon Lyons could not recall whether he was aware of Deputy Garcia's pursuit.
Appellants filed their action against the appellee sheriff alleging as negligence the deputies' actions at the scene of Jimmy Bowden's arrest in placing a driver (Brandon Lyons) who they knew or should have known was intoxicated in control of the vehicle and allowing him to drive away. Appellants also alleged as negligence in this single-count complaint the pursuit of the Lyons vehicle by Deputy Garcia.
The trial judge, assuming that the deputies knew or should have known that Brandon Lyons was alcohol impaired, granted partial final summary judgment for appellee on the basis of sovereign immunity as to the actions of the deputies in allowing Brandon Lyons to drive away. However, the trial judge allowed appellants to file a third amended complaint in an attempt to state a cause of action for negligent pursuit in accord with City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla. 1992). Subsequently, final summary judgment was also rendered for appellee on that third amended complaint, the trial judge finding that appellants' allegations did not fit factually within the confines of City of Pinellas Park v. Brown.
Appellants seek review of both the partial final summary judgments on their second amended complaint and the final summary judgments on their third amended complaint. Standing alone, we question whether appellants' third amended complaint charging negligent pursuit could be sustained. However, as we will explain, we conclude that sovereign immunity should not bar appellants' cause of action as alleged in their second amended complaint. That complaint included allegations of negligence both in regard to allowing an intoxicated Brandon Lyons to drive away from the scene of Jimmy Bowden's arrest and in the subsequent pursuit of Lyons by Deputy Garcia. We therefore reverse both the partial summary final judgments in regard to the second amended complaint and the final summary judgments in regard to the third amended complaint. On remand, if necessary, appellants should be allowed to replead their causes of action in a single complaint containing all of their allegations of negligence surrounding the events at the time of the arrest of Jimmy Bowden and the subsequent events leading tragically to the accident causing the deaths of Robert and Damon Bowden.
In arriving at our conclusions we have sought under the circumstances of this case to find the level ground between the sovereign immunity principle of Everton v. Willard, 468 So.2d 936 (Fla.1985), and the principle stated in Kaisner v. Kolb, 543 So.2d 732 (Fla.1989) and City of Pinellas Park v. Brown, which recognize that sovereign immunity is not available to a governmental entity when its officers are engaged in "operational" activities that create a substantial zone of risk. As Justice Grimes observed in his concurring opinion in City of Pinellas Park v. Brown, 604 So.2d at 1228: "This is a close case because it involves competing public policy considerations."
*717 We reach the conclusions we do because we find that the alleged acts of the deputies involved in this instance fall more within the teachings of Kaisner, and similar cases, and are distinguishable from those of the deputy sheriff in Everton. In Everton, the court found that there has never been a common law duty of care owed to an individual with respect to the discretionary judgmental power granted a police officer to make an arrest and to enforce the law. In the case before us, however, the discretionary authority to make an arrest (of Jimmy Bowden) had been exercised. The exercise of that discretion in arresting the driver of the vehicle then created a special relationship in the deputies' "operational" activities with the other three occupants of the vehicle, who for the purposes of this appeal, may be assumed to have been intoxicated. As the Everton court said:
We recognize that, if a special relationship exists between an individual and a governmental entity, there could be a duty of care owed to the individual. This relationship is illustrated by the situation in which the police accept the responsibility to protect a particular person who has assisted them in the arrest or prosecution of criminal defendants and the individual is in danger due to that assistance. In such a case, a special duty to use reasonable care in the protection of the individual may arise.
468 So.2d at 938.
For the purposes of this appeal, we assume, as did the trial judge, that Brandon Lyons was in custody and otherwise detained when Jimmy Bowden was arrested for D.U.I. and that Brandon Lyons was then administered a field sobriety test by two deputies and instructed, while intoxicated, to drive his vehicle away. In a similar situation, the Kaisner court stated:
In this case, we find that petitioner was owed a duty of care by the police officers when he was directed to stop and thus was deprived of his normal opportunity for protection. Under our case law, our courts have found liability or entertained suits after law enforcement officers took persons into custody, otherwise detained them, deprived them of liberty or placed them in danger. E.g., Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla.1957) (liability when inmate died of smoke inhalation in negligently attended jail); Department of Highway Safety and Motor Vehicles v. Kropff, 491 So.2d 1252 (Fla. 3d DCA 1986) (liability for injury caused by officer's negligence during roadside stop); Walston v. Florida Highway Patrol, 429 So.2d 1322 (Fla. 5th DCA 1983) (liability for injury caused by officer's negligence during roadside stop); White v. Palm Beach County, 404 So.2d 123 (Fla. 4th DCA 1981) (liability for violence and sexual abuse suffered by inmates in jail); Henderson v. City of St. Petersburg, 247 So.2d 23 (Fla. 2d DCA) [sic] (liability for injury to police informant after police knew he was in danger for cooperating with authorities), cert. denied, 250 So.2d 643 (Fla.1971). So long as petitioner was placed in some sort of "custody" or detention, he is owed a common law duty of care.
The term "custody" is defined as the detainer of a man's person by virtue of lawful process or authority.
The term is very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession.
Black's Law Dictionary 347 (5th ed.1979) (emphasis added). We thus conclude that "custody" need not consist of the formal act of an arrest, but can include any detention.
543 So.2d at 734.
We conclude as did the Kaisner court that:
While the act in question in this case certainly involved a degree of discretion, we cannot say that it was the type of discretion that needs to be insulated from suit. Intervention of the courts in this case will not entangle them in fundamental questions of public policy or planning. It merely will require the courts to determine if the officers should have acted in a manner more consistent with the safety of the individuals involved.
543 So.2d at 737, 738 (footnote omitted).
If we assume, and for the purposes of this appeal we do, that the deputies involved *718 in the arrest of Jimmy Bowden knew or should have known that Brandon Lyons was at least equally as intoxicated as Jimmy Bowden, the arrest of Bowden created a special relationship between the arresting officers and the other three occupants of the vehicle whose driver they had just arrested and taken into custody. Once that special relationship came into existence, the officers owed a duty of care to Brandon Lyons and to Damon and Robert Bowden. Appellants should be allowed to plead and attempt to prove that the actions of the officers from the arrest of Jimmy Bowden to the time of the accident causing the death of Damon and Robert Bowden constituted a breach of that duty of care.
Reversed and remanded.
FRANK and QUINCE, JJ., concur.