737 So.2d 532 (1999)
Cal HENDERSON, etc., Petitioner,
v.
Isac B. BOWDEN, et al., Respondents.
No. 91,965.
Supreme Court of Florida.
July 8, 1999.
*533 Darrell D. Dirks and Manuel J. Alvarez of Rywant, Alvarez, Jones, Russo & Guyton, P.A., Tampa, Florida, for Petitioner.
R. Kent Lilly and Angela R. Pulido of Kent Lilly, P.A., Lakeland, Florida, for Respondents.
WELLS, J.
We have for review Bowden v. Henderson, 700 So.2d 714 (Fla. 2d DCA 1997), which is in apparent conflict with our opinion in Everton v. Willard, 468 So.2d 936 (Fla.1985), on an issue regarding the doctrine of sovereign immunity. See Art. V, § 3(b)(3), Fla. Const. As a threshold matter, we conclude that the sheriffs deputies here owed the plaintiffs' decedents a duty of care because the deputies' alleged actions during the roadside detention placed the decedents within a foreseeable zone of risk. Regarding sovereign immunity, we resolve the apparent conflict by determining that Kaisner v. Kolb, 543 So.2d 732 (Fla.1989), controls this case and that Everton is factually distinguishable. Following the Kaisner line of cases, we conclude that sovereign immunity does not bar the instant suit because the deputies' actions were operational in nature as opposed to the discretionary, policy-making functions in which courts should not become involved under the separation-of-powers doctrine. The decision below is approved.

I. Factual Background
This is a wrongful death action filed by Isac Bowden and Luna Dell Archie Haywood, in their individual capacities and as co-personal representatives of the estates of their sons Damon and Robert Bowden, against Cal Henderson, Sheriff of Hillsborough County. In their second amended complaint, the plaintiffs alleged that Hillsborough County sheriffs deputies owed a duty of care to their sons resulting from the deputies' roadside detention of a vehicle in which they were passengers. The plaintiffs further alleged that the deputies breached this duty, i.e., were negligent when, after arresting the driver for driving under the influence (DUI), they directed an intoxicated person to drive the vehicle and that this decision caused the deaths of their sons. In a third amended complaint, the plaintiffs also alleged a claim of negligent pursuit. The trial court granted Sheriff Henderson's motion for summary judgment on both claims.
The record developed at the time the court granted summary judgment reveals the following facts.[1] On the evening of August 7, 1992, three brothers, Jimmy, Damon, and Robert Bowden, and their friend, Brandon Lyons, were riding in a 1988 Honda owned by Lyons' father. Lyons stated in his deposition that he and all the Bowdens had ingested alcohol and acid, or LSD,[2] that night. After leaving a party, Lyons, feeling he was too intoxicated to drive, asked Jimmy to assume control of the car. Jimmy drove the vehicle, Lyons sat in the front passenger seat, and Damon and Robert sat in the back seat.
Shortly before midnight, Deputy Gary Herman stopped the Honda after he clocked it traveling seventy-four miles per *534 hour in a forty-five-mile-per-hour speed zone. Deputy Given Garcia, along with other deputies, arrived shortly afterward to assist Deputy Herman. The deputies eventually arrested Jimmy Bowden, charging him with DUI.
Lyons testified he remembers nothing from when he relinquished control of the car until Deputy Herman stopped them. Lyons further testified he does remember, after the deputy stopped his vehicle, that he repeatedly told the deputies that he was intoxicated.[3] Despite his admission of intoxication, Lyons said that a deputy, he could not remember which one, directed him to drive to a nearby Circle K convenience store. The deputy allegedly told Lyons that he would follow Lyons to the store. Lyons drove to the Circle K and waited. After a while, Lyons decided to drive away from the parking lot. From that point until the accident, Lyons has no recollection of what transpired.
Deputies Herman and Garcia denied that Lyons indicated to them that he was intoxicated. To the contrary, both testified that Lyons insisted he was sober and that each administered a field sobriety test, with each result indicating Lyons was not impaired. Moreover, neither Herman nor Garcia smelled alcohol on Lyons' breath.[4] The deputies decided that the three should not drive home on their own because of the belligerent manner in which Damon Bowden was acting. They gave Lyons the following option: he could either drive to a nearby Circle K convenience store and call his parents for a ride home; or he could have the car impounded, and his parents could pick them up at the police station. Lyons opted to drive to the convenience store to call his parents.
According to the deposition testimony, approximately three minutes after Lyons departed for the store, Deputy Herman left the scene with Jimmy Bowden in the back of his cruiser and Deputy Garcia proceeded to the store to ensure that Lyons called his parents. When Deputy Garcia arrived at the store, he witnessed Lyons' vehicle leaving the parking lot at a high rate of speed. Deputy Garcia gave chase but did not activate his cruiser's emergency lights or sirens. Lyons subsequently failed to negotiate a turn in the road and collided with a cluster of trees. Damon and Robert were killed.
On this record, Sheriff Henderson moved for summary judgment. The trial judge entered a partial summary judgment, ruling that sovereign immunity barred plaintiffs' general negligence claim, but he allowed the plaintiffs leave to amend their complaint to state a cause of action for negligent pursuit. The court eventually entered final summary judgment on this claim, finding that the plaintiffs failed to state a cause of action under City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla.1992). The Second District Court of Appeal reversed, holding that the deputies owed Damon and Robert Bowden a duty of reasonable care during the roadside detention and that sovereign immunity did not bar the claim. Bowden v. Henderson, 700 So.2d 714 (Fla. 2d DCA 1997). The district court concluded that the facts offered in support of the negligent pursuit claim should be alleged with the other facts in a single count of negligence. Id. at 716. We granted Sheriff Henderson's petition for review.[5]

II. Discussion
The State of Florida has waived sovereign immunity in tort actions for any *535 act for which a private person under similar circumstances would be held liable. See Art. X, § 13, Fla. Const.; § 768.28, Fla. Stat. (1995).[6] A threshold matter is whether the sheriff's deputies had a duty to act with care toward the decedents; for, as we have stated time and again, there can be no governmental liability unless a common law or statutory duty of care existed that would have been applicable to an individual under similar circumstances. See City of Pinellas Park v. Brown, 604 So.2d 1222, 1225 (Fla.1992); Kaisner v. Kolb, 543 So.2d 732, 734 (Fla.1989); Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So.2d 912, 917 (Fla.1985). "Conceptually, the question of the applicability of ... immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." Kaisner, 543 So.2d at 734 (quoting Williams v. State, 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137, 139 (1983)). Assuming a duty is owed, we must then determine whether sovereign immunity bars an action for an alleged breach of that duty. See id. at 736.

A. Duty
In McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), this Court explained the legal analysis that a court must engage in when determining whether the defendant in a negligence action owed a duty of care to the plaintiff:
The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others. See Kaisner, 543 So.2d at 735 (citing Stevens v. Jefferson, 436 So.2d 33, 35 (Fla.1983))....
... Foreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions. Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others. As we have stated:
Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.

Kaisner, 543 So.2d at 735 (citing Stevens v. Jefferson, 436 So.2d 33, 35 (Fla.1983)) (emphasis added); see Webb v. Glades Elec. Coop., Inc., 521 So.2d 258 (Fla. 2d DCA 1988). Thus, as the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken. J.G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45 (1912).
The statute books and case law, in other words, are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a *536 duty of care. Rather, each defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element. For these same reasons, duty exists as a matter of law and is not a factual question for the jury to decide: Duty is the standard of conduct given to the jury for gauging the defendant's factual conduct. As a corollary, the trial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant.
Id. at 502-03 (footnotes omitted);[7]see also W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 53, at 359 (5th ed. 1984) ("No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.").
In deciding McCain, this Court relied heavily on its decision in Kaisner, a case which involved the question of whether law enforcement officers owed a duty to a citizen by virtue of the officers' actions during a roadside detention. Officers stopped Glen Kaisner because his vehicle had an expired inspection sticker. The officers parked about one car's length behind Kaisner. Kaisner exited his vehicle. As Kaisner walked between his vehicle and the officers' cruiser, one of the officers ordered Kaisner not to come any closer to the cruiser. Kaisner complied with the officer's order. While Kaisner waited between the vehicles, a third vehicle collided with the' police cruiser from behind, propelling it into Kaisner and an officer, injuring both.
We found that the officers owed Kaisner a duty to act reasonably under the circumstances. Our decision was based on a determination that the officers placed Kaisner in a foreseeable zone of risk which gave rise to a common-law duty.
In this case, we find that [Kaisner] was owed a duty of care by the police officers when he was directed to stop and thus was deprived of his normal opportunity for protection. Under our case law, our courts have found liability or entertained suits after law enforcement officers took persons into custody, otherwise detained them, deprived them of liberty or placed them in danger.

Kaisner, 543 So.2d at 734 (emphasis added). Applying McCain and Kaisner to this record, read in the light most favorable to the plaintiffs, we conclude that the sheriff's deputies placed the passengers of Lyons' vehicle in danger by directing an intoxicated Lyons to drive to the Circle K store and that this direction, more likely than not, created a foreseeable zone of risk, thereby giving rise to a legal duty.[8]
Sheriff Henderson argues that Kaisner does not apply in this case because only Jimmy Bowden was in custody, not the passengers of the vehicle. This argument has no application here because our holding today is not based on the fact that the passengers may or may not have been in the deputies' custody. Rather, our decision is based on the fact that the deputies' actions placed the passengers in danger. For example, had the deputies exposed Lyons' vehicle to the risk of being hit by *537 another vehicle and had such an accident in fact occurred causing injury to the passengers, a prima facie case of negligence on the part of the passengers would clearly be recognized.
The duty the law imposes on the deputies in this case is also illustrated by the following rules and examples:
If there is no duty to go to the assistance of a person in difficulty or peril, there is at least a duty to avoid any affirmative acts which make his situation worse. When we cross the line into the field of "misfeasance," liability is far easier to find. A truck driver may be under no obligation whatever to signal to a car behind him that it may safely pass; but if he does signal, he will be liable if he fails to exercise proper care and injury results. There may be no duty to take care of a man who is ill or intoxicated, and unable to look out for himself; but it is another thing entirely to eject him into the danger of a street or railroad yard; and if he is injured there will be liability. But further, if the defendant does attempt to aid him, and takes charge and control of the situation, he is regarded as entering voluntarily into a relation which is attended with responsibility.
Keeton et al., supra at 378 (footnotes omitted).
As alleged here, the sheriff's deputies created a risk that, but for the roadside detention and decisions made during that detention, would not have otherwise existed. We believe that the district court was correct in determining that the plaintiffs should be able to present the question of whether the sheriff's deputies acted negligently during the roadside detention to the jury. As we stated in Kaisner and reiterated in McCain:
There is a strong public policy in this state that, where reasonable men may differ, the question of foreseeability in negligence cases should be resolved by a jury. Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.
We see no reason why the same analysis should not obtain in a case in which the zone of risk is created by the police.
543 So.2d at 735-36 (citations omitted).

B. Sovereign Immunity
Having concluded that the deputies owed the plaintiffs' decedents a duty of care separate from the general duty owed to the public as a whole, we must now decide whether the deputies' actions are, nevertheless, protected by sovereign immunity. We conclude they are not. In Everton v. Willard, 468 So.2d 936 (Fla. 1985), this Court first addressed the scope of protection afforded to police conduct by section 768.28, Florida Statutes (1973). Sheriff Henderson relies heavily upon this case. Everton, however, dealt with the narrow, albeit important, issue of whether the decision to make an arrest by a law enforcement officer pursuant to the State's police power is a discretionary level function protected by sovereign immunity.[9] We concluded that "the decision of whether to enforce the law by making an arrest is a basic judgmental or discretionary governmental function that is immune from suit." Id. at 937.
Almost four years after our decision in Everton, we issued our opinion in Kaisner, which held that acts by law enforcement officers in respect to persons whom they have detained, other than whether to arrest or detain those persons, were operational acts not protected by sovereign immunity. *538 In reaching this conclusion, we stated:
In general, the Court consistently has held that liability may exist when the act of the government or its agent is not discretionary, but operational in nature. The question here is whether the police officers' acts fell in one or the other category.
. . . .
... [G]overnmental immunity derives entirely from the doctrine of separation of powers, not from a duty of care or from any statutory basis. See art. II, Sec. 3, Fla. Const. Accordingly, the term "discretionary" as used in this context means that the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning. See Department of Health and Rehabilitative Services v. Yamuni, 529 So.2d 258, 260 (Fla.1988). An "operational" function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented....
. . . .
While the act in question in this case certainly involved a degree of discretion, we cannot say that it was the type of discretion that needs to be insulated from suit. Intervention of the courts in this case will not entangle them in fundamental questions of public policy or planning. It merely will require the courts to determine if the officers should have acted in a manner more consistent with the safety of the individuals involved.
Kaisner, 543 So.2d at 736-38.
We agree with the district court below that this issue is controlled by Kaisner, not Everton.
In arriving at our conclusions we have sought under the circumstances of this case to find the level ground between the sovereign immunity principle of Everton v. Willard, 468 So.2d 936 (Fla. 1985), and the principle stated in Kaisner v. Kolb, 543 So.2d 732 (Fla.1989), and City of Pinellas Park v. Brown [604 So.2d 1222 (Fla.1992) ], which recognize that sovereign immunity is not available to a governmental entity when its officers are engaged in "operational" activities that create a substantial zone of risk....
We reach the conclusions we do because we find that the alleged acts of the deputies involved in this instance fall more within the teachings of Kaisner, and similar cases, and are distinguishable from those of the deputy sheriff in Everton.

Henderson, 700 So.2d at 716-17. Unlike Everton, this case does not deal with an officer's discretionary decision whether to arrest or detain a potential suspect. Rather, like Kaisner, this case deals with a situation in which sheriffs deputies are alleged to have acted negligently during a roadside detention.
In Department of Health & Rehabilitative Services v. Whaley, 574 So.2d 100 (Fla.1991), this Court followed the distinction drawn in Kaisner and held that the assignment of juveniles to a particular room or location within an HRS detention facility is an operational function not protected by sovereign immunity. Id. at 101. We stated:
Deciding whether to take someone into custody is a discretionary act for which sovereign immunity has not been waived. Everton v. Willard, 468 So.2d 936 (Fla.1985). A person taken into custody, however, "is owed a common law duty of care." Kaisner, 543 So.2d at 734. Numerous cases have recognized that this duty of exercising reasonable *539 care exists and that it is an operational level function.
Id. at 103.
We therefore conclude, in accordance with this precedent, that the alleged actions of the sheriff's deputies during the roadside detention of the Lyons' vehicle are not the type of actions which are insulated from suit and, therefore, are not protected by the doctrine of sovereign immunity. We do not believe that allowing this action to proceed will involve the judiciary in the policy-making decisions that constitutionally belong to other branches of government.

III. Conclusion
Accordingly, we approve the district court's conclusion that the trial judge erred in granting the partial and final summary judgments and that the case be remanded to the circuit court in accordance with the district court's instructions.
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD and PARIENTE, JJ., concur.
OVERTON, Senior Justice, dissents with an opinion.
OVERTON, Senior Justice, dissenting.
I dissent from the conclusion that under these facts there is a jury issue of whether the deputies' actions placed the passengers in a zone of danger. I restate part of the facts set forth in the majority opinion that is critical to this claim:
The deputies decided that the three should not drive home on their own because of the belligerent manner in which Damon Bowden was acting. They gave Lyons the following option: he could either drive to a nearby Circle K convenience store and call his parents for a ride home; or he could have the car impounded, and his parents could pick them up at the police station. Lyons opted to drive to the convenience store to call his parents.
According to the deposition testimony, approximately three minutes after Lyons departed for the store, Deputy Herman left the scene with Jimmy Bowden in the back of his cruiser and Deputy Garcia proceeded to the store to ensure that Lyons called his parents. When Deputy Garcia arrived at the store, he witnessed Lyons' vehicle leaving the parking lot at a high rate of speed. Deputy Garcia gave chase but did not activate his cruiser's emergency lights or sirens. Lyons subsequently failed to negotiate a turn in the road and collided with a cluster of trees. Damon and Robert were killed.
It must be recognized that these officers had absolutely no authority to take these passengers into custody. From these facts, I find the police officers did act reasonably and did not create a foreseeable zone of risk. The majority opinion effectively makes the taxpayers the insurers of the passengers' safety when a driver is taken into custody even though the passengers are not in the custody and control of the officers. Further, the practical effect is that now officers will believe they must, in every instance, impound every car where the driver is taken into custody and take all passengers to the police station. This in itself can result in other problems including placing them in another type of zone of danger and provide more problems for law enforcement. At oral argument, counsel for the plaintiffs in this action acknowledged that the officers' plan was a good plan, but they did not implement it properly because the officers allowed Lyons to leave the convenience store. There is just so much law enforcement can do under these kinds of circumstances. I find that under these circumstances these officers acted reasonably. To say they violated a duty of care upon these facts is neither legally required or justified.
I would find the summary judgment was properly granted.
NOTES
[1] In addition to various documents and affidavits submitted by both sides, the following individuals provided deposition testimony: Deputies Gary Herman and Given Garcia, Jimmy Bowden, and Brandon Lyons.
[2] LSD, or lysergic acid diethylamide, is defined as "an organic compound ... that induces psychotic symptoms similar to those of schizophrenia." Merriam Webster's Collegiate Dictionary 691 (10th ed.1994).
[3] Jimmy stated that when Lyons exited the Honda he stumbled a number of times and that it was obvious he was intoxicated.
[4] According to the affidavit testimony of plaintiffs' experts, however, the deputies may not have performed the sobriety tests correctly or should have performed other tests, and Lyons' blood alcohol level taken after the accident indicated he may have been legally impaired at the time of the roadside detention.
[5] See Henderson v. Bowden, 717 So.2d 532 (Fla.1998).
[6] Article X, section 13 of the Florida Constitution states that "[p]rovision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating." Section 768.28(1), Florida Statutes (1997), provides:

In accordance with s. 13, Art. X, State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act. Any such action may be brought in the county where the property in litigation is located or, if the affected agency or subdivision has an office in such county for the transaction of its customary business, where the cause of action accrued.
[7] As we noted in McCain, a duty arising from the creation of a foreseeable zone of risk is but one example of when the law will impose a duty to act with care. See McCain, 593 So.2d at 503 n. 2.
[8] The allegation that the deputies affirmatively directed an intoxicated Lyons to drive the vehicle distinguishes this case from those cases which hold that a government entity has no common-law duty to enforce the law for the benefit of an individual or a specific group of individuals, see Trianon Park, 468 So.2d at 918; see also Everton v. Willard, 468 So.2d 936 (Fla.1985) ("A law enforcement officer's duty to protect the citizens is a general duty owed to the public as a whole."), and that a governmental entity has no duty to protect the general public from the lawless acts of third parties. See Vann v. Department of Corrections, 662 So.2d 339, 340 (Fla.1995).
[9] In Everton, this Court stated:

We note as we did in Trianon that this is a narrow issue relating to the discretionary judgmental decision of making an arrest under the police power of a governmental entity.
Everton, 468 So.2d at 939.