WARNER, J.
Appellants, Stephen and Sherry Ziegler, challenge the entry of a final summary judgment against them in them negligence claim against appellee, a hospital. The trial court determined that the hospital had no duty of care to a non-patient for injuries suffered when he fainted after observing and helping his wife during her emergency room treatment. We affirm.
Appellant Stephen Ziegler received a telephone call from his wife advising him that she was at the hospital after accidentally cutting herself. Ziegler immediately went to the Emergency Room of Hollywood Medical Center. Hospital employees directed him to the treatment area where his wife was receiving treatment. She was in a highly agitated state, withdrawing her hand while the nurse was trying to dress the wound.
When Ziegler saw that the nurse was having trouble treating his wife, he got up onto the gurney, put one arm around his wife’s waist to hold her steady, and held out her injured hand so that the nurse *553 could treat the finger. As he did so, he viewed her injury, which appeared to him as though she had severed the top part of her finger.
Once the nurse finished applying the dressing, a physician’s assistant came in and began applying a second dressing. As that occurred, Ziegler said that he felt hot. The physician’s assistant told Ziegler he should go back to the waiting room. After getting off the gurney, Ziegler started to walk away and fainted, falling face-first to the floor and severely injuring himself. According to Ziegler's medical expert, the proper course of action when someone is experiencing a vasovagal reaction, or “fainting spell,” is to either 1) direct the person to lie down, 2) tell the person to sit down with his head between his legs, or 3) allow the person to stand up with the assistance of someone else. Ziegler should not have been asked to stand up unassisted.
Ziegler filed suit against Tenet Health Systems (“Tenet”), the owner of the hospital, claiming that the hospital owed a duty to protect him from fainting once he was invited to participate in the care and treatment of his wife.[1] Ziegler alleged that he had been encouraged to assist in his wife’s treatment and, during that time, he communicated to the hospital staff that he felt ill. However, “[ijnstead of ensuring that he receive assistance or aid, he was instructed by the staff to leave the treatment room unassisted.” Further, Ziegler maintained that it was reasonably foreseeable that a person could become ill from participating in the care and treatment of his wife. On these facts, Ziegler claimed that the hospital breached a duty to Ziegler by failing to protect him from foreseeable harm that was likely to result from his participation in his wife’s care and treatment.
Tenet moved for summary judgment on two grounds. First, Tenet argued that Ziegler’s claims sounded in medical malpractice and were barred under the limitations period of the statute. Second, Tenet claimed that the risk of fainting was “open and obvious” and that it owed no duty to Ziegler. While at first the trial court determined that the action was grounded in medical negligence, on rehearing it reconsidered and determined that Tenet owed no duty to Ziegler. It entered summary judgment. In this appeal, we consider only whether Tenet owed a duty to Ziegler, not whether the claim was one of medical malpractice.
On appeal, the appellants argue that a duty of care to Ziegler arose by virtue of his participation in the treatment of his wife’s injury and by Tenet’s employee directing him to leave the emergency room unassisted after being put on notice that Ziegler was experiencing symptoms that put him at risk of injury. Appellants argue that when the physician’s assistant directed Ziegler to leave the room, which required him to walk unassisted, the appel-lee created a foreseeable zone of risk which gave rise to a duty of care. Tenet asserts that no such duty exists.
Duty is the standard of conduct given to the jury for gauging the defendant’s factual conduct, and the issue of whether a duty exists is a question of law. McCain v. Florida Power Corp., 593 So.2d 500, 502-03 (Fla.1992). The duty element of a negligence claim focuses on whether the defendant’s conduct foreseeably created a broader “zone of risk” that poses a general threat of harm to others. Id. at 502.
“Where a defendant’s conduct creates a foreseeable zone of risk, the law *554 generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.” Kaisner v. Kolb, 543 So.2d 732, 735 (Fla.1989). Legislative enactments and case law “are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a duty of care.” McCain, 593 So.2d at 503. Instead, “each defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result.” Id. “Thus, as the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken.” Henderson v. Bowden, 737 So.2d 532, 535 (Fla.1999).
Ziegler relies on Henderson to support his contention that Tenet owed him a duty of care. In Henderson, four friends left a party after all of them had been drinking. The car owner, Lyons, asked one of his friends to drive. The vehicle was stopped by sheriffs deputies who arrested the driver for driving while intoxicated. Although Lyons allegedly told the deputies that he was intoxicated, he claimed that one of the deputies directed him to drive to a nearby convenience store. The deputy allegedly told Lyons that he would follow Lyons there. After waiting for a while at the convenience store for the deputy, Lyons left and subsequently collided with a cluster of trees, killing his passengers. The passengers’ estates sued the sheriff alleging that the sheriffs deputies owed the deceased passengers the duty to use reasonable care which they breached by allowing an intoxicated person to drive the vehicle after the DUI stop. After the district court reversed a summary judgment in favor of the sheriff, the supreme court took jurisdiction. The supreme court held that by directing an intoxicated Lyons to drive to a convenience store, the sheriffs deputies created a foreseeable zone of risk to the passengers, thereby giving rise to a legal duty. Id. at 536.
The Henderson court relied upon the principle that while generally there is no duty to go to the assistance of a person in peril, “there is at least a duty to avoid any affirmative acts which make his situation worse.” Id. at 537 (quoting Prosser and Keeton on the Law of Torts § 53, at 378 (5th ed.1984)). The court emphasized that its holding was not based on the issue of whether the passengers were in the “custody” of the deputies; rather, the holding was based on the fact that the deputies’ actions placed the passengers in danger. Id. at 536. See also Lemay v. Kondrk, 923 So.2d 1188 (Fla. 5th DCA 2006) (reversing summary judgment in favor of a defendant police officer where the police officer ordered two drunk men to leave a convenience store and walk in opposite directions on an unlit highway, and one of the men was hit by a car and killed).
Ziegler attempts to analogize this case to Henderson. Just as a passenger in Henderson was directed to drive in an impaired state, Ziegler argues that the physician’s assistant “directed” him to walk unassisted to the waiting room in an “impaired” state. Henderson, however, involved police officers giving orders to intoxicated citizens. Whether a person is in custody or not, a police officer exerts a high degree of authority when he or she “directs” someone to do something. Furthermore, as our supreme court carefully explained in Henderson, “the sheriffs deputies created a risk that, but for the roadside detention and decisions made during that detention, would not have otherwise existed.” 737 So.2d at 537. The same cannot be said for the medical assistant’s mere statement to Ziegler that he should go to the waiting room upon learning that Ziegler felt hot. The assistant’s statement did not create a zone of risk.
*555 While there is no Florida ease which squarely addresses the duty a hospital owes to a non-patient permitted to accompany a patient during emergency room treatment, there are several out-of-state cases which address this issue more directly, and those cases are split. In Sacks v. Thomas Jefferson University Hospital, 684 F.Supp. 858 (E.D.Pa.1988), the plaintiff brought her daughter to the hospital emergency room seeking treatment for a wound to the child’s forehead which required stitches. The hospital admitted the child for treatment, and the plaintiff was permitted to remain with her daughter in the treatment room. The doctor on duty, while engaged in suturing the child’s forehead, asked the plaintiff to hold her daughter’s head. The plaintiff did as she was requested. While the plaintiff was observing the suturing, the plaintiff told the defendant’s agent that she felt faint and was going to leave the treatment room. While exiting the room, the plaintiff fainted and fell to the floor, sustaining injuries. The federal court, applying Pennsylvania law, held that the hospital could not be held liable for causing the plaintiff to faint or for failing to prevent her fall. The court reasoned:
At no time did the hospital agree to, or undertake to, accept the plaintiff as a patient, nor was a physician-patient relationship ever established. Only the plaintiffs daughter was admitted to the defendant’s emergency room. Mrs. Sacks voluntarily entered the treatment room to witness the suturing that had been sought by her for her daughter. By doing so, she accepted the risk that she would witness events or conditions inherent in the medical treatment which could upset her. She was not required to be present nor was she required to hold her daughter’s head. Indeed, she abandoned her daughter to leave the room when she felt faint.
Id. at 859. See also Walters v. St. Francis Hosp. & Med. Ctr., Inc., 23 Kan.App.2d 595, 932 P.2d 1041 (1997) (finding the danger of fainting in an emergency room is open and obvious and thus does not require a hospital to warn an invitee that he or she may have an adverse reaction from witnessing a medical procedure). Factually this case is on all fours with Sacks.
Ziegler attempts to distinguish Sacks, noting that there the hospital did not “direct” the plaintiff to get up and walk unassisted. This, we think, is a meaningless distinction. In both Sacks and the present case, the medical professionals were on notice that the plaintiffs were not feeling well. Moreover, at no time was Ziegler under the control of the hospital in this case. That the medical assistant suggested to Ziegler that he might want to leave the emergency area should not be the determining factor for the hospital’s liability.
A Washington court likewise confronted this issue and refused to find liability on the part of the hospital. In Zenkina v. Sisters of Providence in Washington, Inc., 83 Wash.App. 556, 922 P.2d 171 (1996), the plaintiff was invited into the treatment room by hospital staff to translate while her nephew, who spoke little English, was getting stitches. The - doctor asked the plaintiff to hold the boy’s hands to restrain the child in case he attempted to move suddenly. When the doctor opened the boy’s wound to clean it, the plaintiff fainted, striking her head on the floor. The court concluded that the hospital had neither a duty to prevent the plaintiff from fainting, or to warn her of the risk:
Although the record reflects that perhaps a dozen relatives accompanying patients to this emergency room faint or become lightheaded in the course of a year, so that the risk of relatives faint *556 ing is certainly foreseeable, the risk is also obvious. To require hospitals to prevent relatives from fainting would be to require hospitals to bar them from the emergency room altogether. To require hospitals to warn relatives of the risk that they might faint at the sight of blood or at the sight of some medical procedure such as suturing or the giving of an injection would be to require hospitals to warn of a risk that is so well known as to require no warning at all. We decline to impose a duty to warn of a risk as obvious as this one.
Id. at 176 (emphasis in original).
One case, however, has held that a hospital emergency room does have a duty to protect a non-patient from fainting once the hospital invites the non-patient to participate in the care and treatment of the patient. See O’Hara v. Holy Cross Hosp., 137 Ill.2d 332, 148 Ill.Dec. 712, 561 N.E.2d 18 (1990) (holding that a duty of care arose when the plaintiff was asked to wipe Novocain from her son’s mouth during treatment of the boy’s facial wound and plaintiff subsequently fainted, causing injury). Ziegler urges us to adopt O’Hara’s “participation in patient care” exception to the general rule that the hospital owes no duty to protect a non-patient bystander from fainting. We decline to adopt such a rule.
Because the hospital owed no duty to protect Ziegler from fainting, we affirm the judgment of the trial court.
GROSS and TAYLOR, JJ., concur.

. Mr. Ziegler’s wife also brought a claim for loss of consortium.