# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D2025-1731

———————————————

GORDON SMITH, in his Capacity
as the Duly Elected Sheriff of
Bradford County, Florida,

    Appellant,

    v.

DALTON LEE, as Personal
Representative of the Estate of
April Lee, Deceased,

    Appellee.

———————————————

On appeal from the Circuit Court for Bradford County.
George M. Wright, Judge.

May 20, 2026

LEWIS, J.

Appellant Gordon Smith, in his capacity as the duly elected sheriff of Bradford County, Florida, appeals a non-final order denying his motion for summary judgment on the issues of whether he owed a duty of care to the decedent, April Lee, and whether sovereign immunity protects him from the wrongful death action brought by Mrs. Lee's husband, Appellee Dalton Lee, as personal representative of her estate. For the reasons that follow, we dismiss for lack of jurisdiction the portion of the appeal seeking interlocutory review of the trial court's determination that

Appellant owed a duty of care to Mrs. Lee, and we affirm the trial court's ruling that sovereign immunity does not preclude Appellee's wrongful death action against Appellant.

## BACKGROUND

The record developed at the time the court denied Sheriff Smith's motion for summary judgment reveals the following facts. When Brandon Cramer left his home in the early morning hours on January 21, 2022, he was "extremely" impaired as he had been consuming Xanax, amphetamines, methamphetamine, and other substances for two days. After glancing down at his cell phone and losing control of his vehicle, Cramer hit a street sign and drove into a ditch. He spent thirty to forty-five minutes unsuccessfully trying to dig his truck out of the mud when two narcotic K-9 handlers employed by the Florida Department of Corrections ("DOC") happened to drive by and stopped. Both DOC employees believed that Cramer was under the influence of a substance because "it didn't seem like he was all there," he was slurring his words, and he was not steady on his feet. One of the DOC employees found on the ground right outside of Cramer's open passenger door an empty Suboxone wrapper that appeared to have just fallen out of the vehicle.

In the meantime, Deputy Duncan with the Bradford County Sheriff's Office was alerted to the vehicle in the ditch. When Duncan arrived at the scene at 5:23 a.m., the DOC employees shared with her their suspicion that Cramer was under the influence and that they found an empty Suboxone wrapper beside his truck. After a brief interaction with Cramer, Duncan called her supervisor, Corporal Crews, to tell him that she was 99% certain that Cramer was driving under the influence and to ask for assistance with a DUI investigation because she had never conducted one. When Crews reported to the scene, Duncan told him that "as you can tell, [Cramer] is like falling all over the place. Took out that sign. He's on inmate release status." Duncan also informed Crews about the empty Suboxone packet by Cramer's vehicle. Cramer explained that he had jerked to the side of the road because he did not want to go into oncoming traffic and was scared to death of hurting somebody. Cramer had trouble maintaining his balance, he was slurring his speech, and he kept

dropping his phone. Crews noted that Cramer's speech was slow and slurred, but he did not perform any field sobriety tests and muttered that "it's too early for this." Crews then instructed Duncan to call the Miracle Automotive & Truck Service Center to remove Cramer's vehicle from the ditch and to write Cramer a ticket for careless driving. Duncan's body camera captured her interactions at the scene up until this point, but it was turned off before the tow company arrived.

Crews testified during deposition that he decided to call a tow company for Cramer "[j]ust as a courteous thing" as he was under no obligation to have Cramer towed, and he directed Duncan to call Miracle Automotive specifically because they usually responded quicker. Duncan called Miracle Automotive at 5:41 a.m., and when the tow truck driver arrived, she instructed him to get Cramer's vehicle out of the ditch. When Cramer told the tow truck driver that he did not have enough cash for the tow, the driver wrenched him out of the ditch at a discount because the police had called for it.

After his truck was removed from the ditch, Cramer asked Crews if he could sit there to warm up and regain his faculties, but Crews told him that he had to drive away. Within six minutes of leaving the scene of the first crash, Cramer crossed the center line and struck Mrs. Lee's vehicle head on, killing her instantly. The deputies who responded to the scene of this second crash believed that Cramer was under the influence of narcotics.

Mr. Lee brought a wrongful death action against Sheriff Smith, among others who have since settled the case, alleging that the deputies negligently enabled a severely impaired person to drive away from the scene of a crash by using the services of a tow truck to place back into operation an inoperable vehicle. On this record, Sheriff Smith moved for final summary judgment on the grounds that his deputies did not owe a duty of care to Mrs. Lee and that sovereign immunity bars Mr. Lee's claim because the deputies' decision not to arrest Cramer was a discretionary act. Mr. Lee countered that Sheriff Smith owed a duty of care to Mrs. Lee because the deputies affirmatively created a foreseeable zone of risk and that sovereign immunity does not apply because the deputies' acts of helping to free Cramer's vehicle from the ditch

3

and directing the impaired Cramer to drive away are operational in nature. The trial court agreed with Mr. Lee and denied Sheriff Smith's motion for summary judgment. Regarding sovereign immunity, the trial court found the facts of the case to be nearly identical to those in *Henderson v. Bowden*, 737 So. 2d 532 (Fla. 1999), and it concluded that while the deputies' decision not to arrest Cramer is a discretionary function, the deputies' actions of enabling Cramer to get his otherwise inoperable vehicle back on the roadway and then instructing him to drive despite obvious indicators of impairment are operational functions that are not protected by sovereign immunity. This appeal followed.

## ANALYSIS

### Duty of Care

We have jurisdiction to review interlocutory orders only "to the extent provided by rules adopted by the supreme court." Art. V, § 4(b)(1), Fla. Const. In turn, Florida Rule of Appellate Procedure 9.130 sets forth a limited number of categories of non-final orders that can be reviewed on interlocutory appeal. Because the supreme court "carefully created each category of non-final order subject to interlocutory review," those categories must be narrowly construed. *Walker v. Fla. Gas Transmission Co., LLC*, 134 So. 3d 571, 572 (Fla. 1st DCA 2014).

Florida Rule of Appellate Procedure 9.130(a)(3)(F)(iii) authorizes appellate review of a non-final order that denies a motion that "asserts entitlement to sovereign immunity." It is well-established that "[d]uty of care is a concept separate and apart from sovereign immunity." *Emerald Coast Utilities Auth. v. Thomas Home Corp.*, 359 So. 3d 1239, 1247 (Fla. 1st DCA 2023) (citing *Florida Highway Patrol v. Jackson*, 288 So. 3d 1179, 1185 (Fla. 2020), where the supreme court recognized the distinction between the duty of care and sovereign immunity analyses); *see also Wallace v. Dean*, 3 So. 3d 1035, 1044 (Fla. 2009) (stating that the duty analysis is "conceptually distinct" from the sovereign immunity analysis). Yet, the supreme court did not create a category within rule 9.130 authorizing review of a non-final order that denies a motion that asserts a lack of duty of care. As we have explained, our jurisdiction to review a non-final order is limited to the appealable portion of the order under rule 9.130 and does not

4

extend to other matters addressed in the order.  *See Saidin v. Korecki*, 202 So. 3d 468, 470 (Fla. 1st DCA 2016); *Hancock v. Suwannee Cnty. Sch. Bd.*, 149 So. 3d 1188, 1190 (Fla. 1st DCA 2014).

Given such, we must dismiss for lack of jurisdiction the portion of the appeal seeking interlocutory review of the trial court's determination that Sheriff Smith owed a duty of care to Mrs. Lee.  *See Fla. Dep't of Highway Safety & Motor Vehicles v. Fortes*, 354 So. 3d 637, 637–38 (Fla. 3d DCA 2023) (dismissing for lack of jurisdiction the portion of the appeal from a non-final order denying the appellants' motions for summary judgment that sought review of the trial court's determination of the duty of care issue, and affirming the court's determination that sovereign immunity did not bar the appellee's claims).

## Sovereign Immunity

We review de novo a trial court's ruling on a motion for summary judgment.  *Verizon Commc'ns Inc. v. Fla. Dep't of Revenue*, 386 So. 3d 599, 601 (Fla. 1st DCA 2024).  Sovereign immunity protects the state and its subdivisions from civil liability unless it is waived by legislative enactment or constitutional amendment. *Univ. of Fla. Bd. of Trs. v. Browning*, 387 So. 3d 371, 374 (Fla. 1st DCA 2024).  The legislature codified a limited waiver of sovereign immunity for tort actions, allowing actions at law against the state or any of its agencies to recover damages in tort for personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of the employee's office or employment under circumstances in which the state or such agency, if a private person, would be liable to the claimant.  § 768.28(1), Fla. Stat. (2022).

Despite the limited waiver of sovereign immunity in section 768.28, when the governmental actions are deemed discretionary, as opposed to operational, the government has absolute immunity from suit pursuant to the separation of powers doctrine. *City of Freeport v. Beach Cmty. Bank*, 108 So. 3d 684, 687 (Fla. 1st DCA 2013).  Because every human endeavor and governmental function involves some level of discretion, our supreme court has rejected a definitional approach to discretion and instead requires discretion

5

at the policy making or planning level. *Wallace*, 3 So. 3d at 1053. "[A] 'discretionary,' planning-level function involves 'an exercise of executive or legislative power such that a court's intervention by way of tort law would inappropriately entangle the court in fundamental questions of policy and planning.'" *Beach Cmty. Bank v. City of Freeport, Fla.*, 150 So. 3d 1111, 1114 (Fla. 2014) (citation omitted). "An 'operational' function, on the other hand, 'is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented.'" *Id.* (citation omitted).

As the first step of the sovereign immunity analysis, governmental function or activity should be placed into one of four basic categories: "(I) legislative, permitting, licensing, and executive officer functions; (II) enforcement of laws and the protection of public safety; (III) capital improvements and property control operations; and (IV) providing professional, educational, and general services for the health and welfare of the citizens." *Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 911 (Fla. 1995) (citing *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 914 (Fla. 1985)). There is no governmental tort liability for the discretionary functions described in categories I and II, but there may be substantial liability under categories III and IV. *Id.* at 912.

If the governmental activity falls under category III or IV, the court must next determine whether the activity is a discretionary or operational function by applying the *Evangelical Brethren* test, which poses the following questions:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the government agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory,

or lawful authority and duty to do or make the challenged act, omission, or decision?

*Id.* at 912–13.

If all these questions can be unequivocally answered in the affirmative, then the challenged act is probably a discretionary planning or judgmental function that is immune from tort liability. *Id.* But if any of the questions are answered in the negative, then the activity is probably an operational function that is not immune, though the court should further consider "the importance to the public of the function involved, the extent to which government liability might impair free exercise of the function, and the availability to individuals affected of remedies other than tort suits for damages." *See id.* at 913–14; *Dep't of Health & Rehab. Servs. v. Yamuni*, 529 So. 2d 258, 260 (Fla. 1988).

Turning to this case, the parties dispute which category the alleged negligent governmental activity falls under, with Sheriff Smith asserting that it is a category II function (enforcement of laws and the protection of public safety), and Mr. Lee arguing that it is a category IV function (providing general services for the welfare of citizens). We conclude that the deputies' actions of calling a tow truck to extricate the intoxicated motorist's vehicle from the ditch and then directing him to drive away, while expressly denying his request to remain on the roadside to regain his faculties, fall within category IV because they constitute the provision of general services rather than the enforcement of laws.

We reject Sheriff Smith's attempt to mischaracterize the alleged negligent conduct as the deputies' failure to arrest Cramer when Mr. Lee's allegations and arguments make clear that it is the deputies' affirmative actions of putting an intoxicated driver back on the road. Stated differently, Mr. Lee's negligence claim is not based on the deputies' action of merely permitting an intoxicated person to drive through a failure to arrest him, but rather on the deputies' affirmative actions of enabling and ordering the intoxicated person to drive. When the deputies called a tow truck to extricate Cramer's otherwise inoperable vehicle from the ditch, they were not enforcing any laws or protecting the general public; instead, they were providing general services for Cramer's welfare. In fact, Corporal Crews conceded that he was under no obligation

7

to have Cramer's vehicle towed and he called a tow truck for him "as a courteous thing." Similarly, Crews was not enforcing any laws or protecting public safety when he ordered the intoxicated Cramer to drive away, despite Cramer's request to stay until he warmed up and regained his faculties.

Having concluded that the alleged negligent conduct falls within category IV, we must next determine whether the deputies' act constitutes a discretionary or operational function. We answer the first three questions of the *Evangelical Brethren* test in the negative because the alleged action does not involve a basic governmental policy as enabling and directing an intoxicated person to drive reflect at best a secondary decision about how to proceed after having decided not to arrest him for DUI. This case deals with the operational manner in which the roadside encounter was concluded, not the fundamental wisdom of creating a policy or program as an initial matter. Additionally, subjecting Sheriff Smith to accountability does not involve judicial scrutiny of any discretionary policy-making or planning function.

In fact, in *Henderson v. Bowden,* the Florida Supreme Court recognized that unlike an officer's decision whether to enforce the law by arresting an intoxicated driver, which is a discretionary function that is immune from suit, an officer's action of directing an intoxicated person to drive is an operational function that is not immune. 737 So. 2d 532, 537–39 (Fla. 1999). There, after the deputies stopped a vehicle for speeding, they arrested the driver for DUI and directed the intoxicated front seat passenger to drive to a nearby Circle K. *Id.* at 533–34. The intoxicated person then drove away from the store at a high rate of speed and crashed into trees, resulting in the death of his backseat passengers. *Id.* at 534. In concluding that the deputies' action of directing the intoxicated person to drive was an operational function, the supreme court explained that the case did not involve an officer's discretionary decision whether to arrest or detain a person and instead dealt "with a situation in which sheriff's deputies are alleged to have acted negligently during a roadside detention." *Id.* at 537–38 (distinguishing *Everton v. Willard*, 468 So. 2d 936, 937–38 (Fla. 1985), where an intoxicated driver was involved in a fatal collision shortly after a deputy permitted him to drive following a stop for a traffic violation, and the supreme court held that "the decision of

8

whether to enforce the law by making an arrest is a basic judgmental or discretionary governmental function that is immune from suit").

Therefore, we hold that the deputies' challenged conduct was an operational function for which Sheriff Smith does not have sovereign immunity. Our decision is consistent with the supreme court's holding in *Henderson* that the deputies' act of directing an intoxicated person to drive was not protected by sovereign immunity.

## CONCLUSION

We dismiss for lack of jurisdiction the portion of the appeal seeking review of the trial court's determination that Sheriff Smith owed a duty of care. However, we affirm the trial court's ruling that Sheriff Smith is not entitled to sovereign immunity.

DISMISSED in part; AFFIRMED in part.

WINOKUR and NEFF, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Jeffrey D. Slanker, Dawn P. Whitehurst, Michael P. Spellman, and Matthew J. Carson of Sniffen & Spellman, P.A., Tallahassee, for Appellant.

John S. Mills and Jonathan A. Martin of The Mills Firm, P.A., Jacksonville, for Appellee.

9